[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAR 2, 2010
JOHN LEY
CLERK

_____

No. 07-14708

_____

D. C. Docket No. 07-00009-CR-5-LSC-JEO

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

BRIAN SCOTT CULVER,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

(March 2, 2010)

Before DUBINA, Chief Judge, TJOFLAT, Circuit Judge, and BOWEN,* District
Judge.

DUBINA, Chief Judge:

_____

* Honorable Dudley H. Bowen, Jr., United States District Judge for the Southern District
of Georgia, sitting by designation.

Brian Scott Culver appeals his convictions and sentences on five counts of production of child pornography under 18 U.S.C. § 2251(a). For the reasons that follow, we affirm.

## I. FACTS

On the night of November 11, 2003, K.W., a thirteen year old girl, awoke to a shock on her upper back that made her feel like she was being electrocuted. K.W. turned around, and, to her surprise, saw her stepfather, Brian Scott Culver, in bed with her with a stethoscope around his neck. As K.W. left her room, she noticed that Culver was shoving the stethoscope and some other items under her bed. After venturing to the kitchen in a state of shock to get a glass of water, K.W. woke her mother, Sharon Brasuell,[1] and told her what had happened. K.W. and Brasuell confronted Culver, and when Culver denied that he had done anything wrong, K.W. and Brasuell looked under K.W.'s bed and found a stethoscope, a vaginal syringe containing K-Y Jelly and a white pill,[2] condoms, and various other items. Culver became angry and told Brasuell that he wanted a divorce. After

---

[1] Sharon Brasuell and Brian Scott Culver were married when the events in question occurred, but they are now divorced. Sharon has remarried, and we refer to her by her present name in this opinion.

[2] Brasuell described the pill as white, but K.W. described the pill as brown. Brasuell testified that she dislodged the pill from the syringe and placed it in a Pamprin bottle that contained a number of white pills that were identical to the one in the syringe. The pills in the Pamprin bottle were later identified as zolpidem, commonly known as Ambien. Brasuell also testified that Culver admitted to preparing the syringe because he was bored.

packing a bag with clothing and some of the items that had been under K.W.'s bed, Culver departed from the family's Hoover, Alabama residence and headed for his lake house in Cullman County, Alabama.

Concerned by the evening's events, Brasuell called the Hoover police to report an incident of domestic violence. When the police arrived at the Hoover residence early on the morning of November 12, Brasuell gave them permission to search the entire premises. The police found an Aleve bottle that contained alprazolam, commonly known as Xanax, and diazepam, commonly known as Valium; a Pamprin bottle that contained zolpidem, commonly known as Ambien; a stun gun box; and seven Polaroid photographs. Five of the photographs depict a nude female from the hips to the mid-thighs. The female's hands and vagina are clearly visible in these five photographs. The other two photographs depict a nude male from the waist down.

The police instructed Brasuell, K.W., and K.W.'s brother to continue to be on the lookout for suspicious items at the Hoover residence, and on November 13, Brasuell and K.W.'s brother found a Polaroid camera and a video camera. On November 14, the police returned to the residence and discovered an 8mm videotape. The tape contains two segments: the first segment lasts nearly 19

3

minutes, and the second lasts approximately one minute.[3] On the first segment of the tape, the female's hands and vagina are clearly visible, and the female's hands do not move at all. The tape depicts a male digitally manipulating the female's vagina and inserting a vaginal syringe into her vagina. At trial, Culver stipulated that his thumb appears on the tape.

## II. PROCEDURAL HISTORY

The state of Alabama brought four charges against Culver: two counts of possession of child pornography, one count of distributing drugs to a minor, and one count of domestic violence for allegedly shocking K.W. with a stun gun. The jury in Culver's state trial convicted him of both counts of possession of child pornography, but acquitted him of the charges of drugging and shocking K.W.

In January 2007, a federal grand jury indicted Culver on two counts of producing child pornography in violation of 18 U.S.C. § 2251(a). In March, the grand jury returned a superseding indictment charging Culver with one count of producing child pornography on an 8mm videotape (Count One), and five counts of producing child pornography on Polaroid film (Counts Two through Six).

At trial, the government produced the 8mm videotape and the Polaroid photographs as well as pictures of K.W. and Sharon Brasuell that display the same

---

[3] The government made no attempt to prove that the second segment of the tape is illegal child pornography.

areas of the body that are depicted on the tape and in the photographs. The jury also directly observed identifying marks on K.W.'s hands. K.W. and Brasuell testified that K.W. was the subject of the sexually explicit visual depictions on the tape and in the photographs. Based on their evaluation of all of the evidence presented at trial, the jury returned a verdict of guilty on Counts One, Two, Three, Four, and Six and a verdict of not guilty on Count Five.

Culver's presentence report ("PSI") assigned his crimes a base offense level of 27. The base level was enhanced two levels because the victim was between the ages of 12 and 16, two levels because the victim was Culver's stepdaughter, and two levels because the victim was under the influence of drugs and thus vulnerable to sexual exploitation, for a total offense level of 33. Based on this offense level and a criminal history category of II, Culver's advisory Guidelines sentence range was 151 to 188 months. However, because the statutory minimum on each count was 180 months, *see* 18 U.S.C. § 2251(e), the lower end of the advisory Guidelines sentence range was automatically adjusted to 180 months. The PSI recommended an upward departure from the Guidelines range for extreme conduct on the basis of Culver's alleged use of a stun gun.

Upon consideration of the presentence report, the testimony of various character witnesses, and the purposes of sentencing stated in 18 U.S.C. § 3553(a),

the district court sentenced Culver to the statutory maximum of 360 months on each count with the sentences on Counts One and Two running concurrently; the sentences on Counts Three, Four, and Six running concurrently; and the two sets of sentences running consecutively, for a total sentence of 720 months imprisonment.

## III.  DISCUSSION

Culver raises a number of issues in his appeal.  He contests the constitutionality of the statute under which he was convicted, a number of evidentiary rulings made by the district court, one of the district court's instructions to the jury, and the sentence imposed by the district court.

A. *Jurisdiction*

The statutory provision at issue in this case was enacted as part of the Child Pornography Prevention Act of 1996 ("CPPA"), Pub. L. No. 104-208, § 121, 110 Stat. 3009-26 (codified as amended in scattered sections of 18 U.S.C. ch. 110).  As relevant to Culver's appeal, the CPPA provides that:

> Any person who employs, uses, persuades, induces, entices, or coerces any minor to engage in . . . any sexually explicit conduct for the purpose of producing any visual depiction of such conduct . . . shall be punished as provided under subsection (e) . . . if that visual depiction was produced or transmitted using materials that have been mailed, shipped, or transported in or affecting interstate or foreign commerce by any means . . . .

18 U.S.C. § 2251(a).

Culver contends that the district court did not have jurisdiction over the

offense charged in Count One of the superseding indictment because § 2251(a) is unconstitutional as applied to his production of child pornography on an 8mm videotape. In addition, Culver maintains that his conduct did not meet the jurisdictional requirement of § 2251(a). We disagree with both of Culver's jurisdictional arguments.

In *United States v. Maxwell*, 446 F.3d 1210 (11th Cir. 2006) ("*Maxwell II*"), we examined whether 18 U.S.C. § 2251A, another provision of the CPPA,[4] is constitutional under the Commerce Clause in light of the Supreme Court's decision in *Gonzales v. Raich*, 545 U.S. 1, 125 S. Ct. 2195 (2005). We explained that the task of courts faced with an as-applied Commerce Clause challenge is to determine "whether Congress could rationally conclude that the cumulative effect of the conduct by [the defendant] and his ilk would substantially affect interstate commerce—specifically the interstate commerce Congress is seeking to eliminate." *Maxwell II*, 446 F.3d at 1218. Upon examination of the CPPA, we determined that "there is nothing irrational about Congress's conclusion, supported by its findings, that pornography begets pornography, regardless of its origin. Nor is it irrational for Congress to conclude that its inability to regulate the intrastate incidence of

---

[4] The reasoning of *Maxwell II* applies with equal force to § 2251(a). Indeed, we have previously upheld § 2251(a) against an as-applied Commerce Clause challenge. *United States v. Smith*, 459 F.3d 1276, 1284 (11th Cir. 2006) ("*Smith II*").

7

child pornography would undermine its broader regulatory scheme designed to eliminate the market in its entirety . . . ." *Id.* We concluded that "it is within Congress's authority to regulate *all* intrastate possession of child pornography, not just that which has traveled in interstate commerce or has been produced using materials that have traveled in interstate commerce." *Id.* Culver's argument that § 2251(a) is unconstitutional as applied to his conduct is foreclosed by our conclusion in *Maxwell II* that Congress has broad authority to regulate both intrastate and interstate child pornography.

Congress has chosen to criminalize the production of child pornography "using materials that have been mailed, shipped, or transported in or affecting interstate or foreign commerce by any means." 18 U.S.C. § 2251(a). At trial, the government proved that the magnetic tape in the 8mm videotape at issue was manufactured in Japan and transported to Dothan, Alabama. However, because the magnetic tape at issue is a component of the finished 8mm videotape assembled in Alabama, Culver contends that the magnetic tape does not fall within the scope of the statutory term "materials." Culver's argument is inconsistent with the plain meaning of the statute, and it ignores the fact that he could not have made the visual depictions at issue without the magnetic tape. We conclude that the jurisdictional requirement of § 2251(a) was met in this case, and the district court

8

had jurisdiction over the offense charged in Count One of the superseding indictment.

B. *Evidentiary Rulings*

Culver challenges a number of the evidentiary rulings made by the district court. After a thorough review of the record and having the benefit of oral argument, we conclude that all of Culver's evidentiary claims are without merit.

1. Drug and Stun Gun Evidence

Culver first asserts that the district court improperly admitted evidence under Federal Rule of Evidence 404(b) that he drugged and used a stun gun on K.W. on November 11, 2003. "We review the district court's admission of prior crimes or bad acts under [Rule] 404(b) for abuse of discretion." *United States v. Ramirez*, 426 F.3d 1344, 1354 (11th Cir. 2005).

The government presented evidence that Culver drugged K.W. with Valium and Xanax and that he attempted to drug K.W. with Ambien. K.W. testified that Culver gave her two blue pills from an Aleve bottle on November 11. K.W. said that she took one of the pills and threw one of them away in the kitchen garbage can. The police found an Aleve bottle containing 13 Valium tablets and 24 Xanax tablets at the Hoover residence and recovered a Xanax tablet from the kitchen garbage can. K.W. tested positive for Valium, and although the Alabama

9

Department of Forensic Sciences did not attempt to determine the specific quantity of Valium in K.W.'s blood, a departmental representative testified that test data suggested that K.W. had taken a single acute dose of Valium. Sharon Brasuell testified that she found a vaginal syringe containing K-Y Jelly and a white pill under K.W.'s bed and that she discharged the pill from the syringe and placed the pill in a Pamprin bottle containing identical white pills. The Pamprin bottle recovered by the police at the Hoover residence contained six Ambien tablets. In addition, the police found computer printouts detailing the effects of Valium and Ambien in Culver's Jeep.

The government also presented evidence that Culver shocked K.W. on her upper back with a stun gun. K.W. testified that she awoke to a shocking sensation on her upper back late in the evening on November 11 and that Culver was in her bed when she awoke. When the police arrived on the scene, they took pictures of marks on K.W.'s upper back that appeared to have been made by a stun gun, and they found a stun gun box in the closet of Culver's bedroom.

Rule 404(b) provides that:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident . . . .

10

Fed. R. Evid. 404(b).

We have explained that Rule 404(b) "is one of inclusion which allows [other act] evidence unless it tends to prove only criminal propensity." *United States v. Cohen*, 888 F.2d 770, 776 (11th Cir. 1989). "The list provided by the rule is not exhaustive and the range of relevancy outside the ban is almost infinite." *Id.* (internal quotation marks omitted). Evidence of prior bad acts must meet a three-part test for admissibility:

> (1) the evidence must be relevant to an issue other than defendant's character;
> (2) the probative value must not be substantially outweighed by its undue prejudice; [and]
> (3) the government must offer sufficient proof so that the jury could find that defendant committed the act.

*United States v. Ellisor*, 522 F.3d 1255, 1267 (11th Cir. 2008) (quoting *Ramirez*, 426 F.3d at 1354).

The government did not offer the evidence that Culver drugged and shocked K.W. to establish that Culver's character made him more likely to commit the charged offense. To the contrary, the government submitted evidence that Culver had the knowledge and the means to render K.W. unconscious to explain to the jury why K.W. could not remember the filming of the tape and why the female depicted on the tape remained completely motionless. The drug and stun gun evidence was offered for a non-character-related purpose.

11

"In assessing the probative value of the extrinsic evidence, we evaluate the Government's incremental need for the evidence to prove guilt beyond a reasonable doubt, 'the overall similarity of the extrinsic and the charged offenses and the closeness or remoteness in time of the charged to the extrinsic offense.'" *Ellisor*, 522 F.3d at 1268 (quoting *United States v. Parr*, 716 F.2d 796, 805 (11th Cir. 1983)). Although several months elapsed between the filming of the child pornography and Culver's drugging and shocking of K.W., the government's incremental need for the drug and stun gun evidence to overcome any potential doubt generated by K.W.'s inability to remember the events in question and the overall similarity between the acts depicted on the tape and the events of November 11 render the drug and stun gun evidence highly probative. Furthermore, although the drug and stun gun evidence may have had a prejudicial effect, we cannot say that the evidence's potential for undue prejudice substantially outweighed the evidence's probative value.

With respect to the third prong of the Rule 404(b) admissibility test, Culver contends that the government did not offer proof sufficient for the jury to conclude that he drugged and shocked K.W. because he was acquitted of these acts in state court. Culver's state trial is irrelevant to the issue before us. In our view, the government presented sufficient evidence in the federal trial for the jury to

conclude that Culver drugged and shocked K.W, and the district court did not abuse its discretion in admitting this evidence.

2. K.W.'s Prior Sexual History

Federal Rule of Evidence 412(a) provides that, in general, in a "criminal proceeding involving alleged sexual misconduct," "[e]vidence offered to prove that any alleged victim engaged in other sexual behavior" is inadmissible. The rule also provides, as a narrow exception to this broad general principle, that evidence of a victim's prior sexual history is admissible when the exclusion of such evidence "would violate the constitutional rights of the defendant." Fed. R. Evid. 412(b)(1)(C). Culver contends that his case implicates the narrow exception to the general rule and that the district court erred by refusing to allow him to present evidence of K.W.'s sexual history. Culver claims that he should have been allowed to present such evidence to rebut evidence offered by the government that Culver was responsible for condoms and a broken abstinence card found in K.W.'s room. As with other rulings on the admissibility of evidence, we review a district court's application of Rule 412 for abuse of discretion.[5] *See Judd v. Rodman*, 105

---

[5] At trial, Culver did not raise the argument that he needed to present evidence of K.W.'s sexual history to rebut the government's evidence that the condoms were attributable to him. "A party not raising an argument below waives his right to raise it on appeal absent plain error." *United States v. Sentovich*, 677 F.2d 834, 837 (11th Cir. 1982). However, because Culver did not waive his argument concerning the broken abstinence card, and our decision is not dependent on the applicable standard of review, we review both of Culver's Rule 412 arguments under the abuse of discretion standard.

F.3d 1339, 1341 (11th Cir. 1997).

"In determining the admissibility of a victim's other sexual behavior under Rule 412(b)(1)(C), we start with the premise that defendants have a constitutional right under the Fifth and Sixth Amendments to introduce evidence in their defense." *United States v. Pumpkin Seed*, 572 F.3d 552, 559 (8th Cir. 2009). However, "the right to present relevant testimony is not without limitation." *Rock v. Arkansas*, 483 U.S. 44, 55, 107 S. Ct. 2704, 2711 (1987). "[T]rial judges retain wide latitude . . . to impose reasonable limits on [testimony] based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Delaware v. Van Arsdall*, 475 U.S. 673, 679, 106 S. Ct. 1431, 1435 (1986). Limitations on a defendant's constitutional right to present evidence are permissible unless they are "arbitrary or disproportionate to the purposes they are designed to serve." *Michigan v. Lucas*, 500 U.S. 145, 151, 111 S. Ct. 1743, 1747 (1991).

The district court's exclusion of evidence of K.W.'s prior sexual history was not arbitrary or disproportionate to the purposes that Rule 412 was designed to serve. The admission of such evidence would have confused the jury and harassed K.W., and the evidence is marginally relevant at best. The key issue in this case is

14

the identity of the female on the tape and in the photographs. Whether Culver was the source of the condoms or the broken abstinence card found in K.W.'s room is not relevant to the issue of the identity of the female on the tape.[6] *See United States v. Sarras*, No. 08-11757, 2009 WL 2176643, at *17 (11th Cir. July 23, 2009) (explaining that victim's other sexual conduct was irrelevant to issue of identification in child pornography production case under § 2251(a)). Furthermore, the district court allowed Culver to cross-examine K.W. on every issue concerning her prior sexual history that was potentially relevant to the charged conduct. The female depicted on the tape had a shaved pubic region, and on cross-examination, Culver was allowed to ask K.W. when and why she had shaved her pubic region in an effort to prove that K.W. is not the female depicted in the tape. At that time, K.W. revealed that she had shaved her pubic region to please her boyfriend. In addition, the district court allowed Culver to attempt to establish K.W.'s bias by allowing testimony that K.W. had gotten into trouble early in the morning on November 11 and that K.W. was extremely angry with

---

[6] Although we conclude that the source of the condoms found under K.W.'s bed is irrelevant to the issue of identification, we note that the government presented strong evidence that Culver was the source of the condoms at issue. Sharon Brasuell testified that she saw the condoms under K.W.'s bed in a shaving kit that she recognized as Culver's, and K.W. testified that she saw the condoms in a clear box under the bed. Both Brasuell and K.W. testified that Culver collected a number of items from under K.W.'s bed and put them in his Jeep, and K.W. testified that she removed the clear box from the Jeep and hid it in the bushes. Upon discovering that some of the items had been removed from his Jeep, Culver told Brasuell, "that little bitch has got my stuff, I will kill her." (R. 135 at 668.)

15

Culver for his role in disciplining her. We agree with the district court that the jury did not need to hear the details of the conduct for which K.W. was disciplined in order for Culver to have a constitutionally sufficient opportunity to impeach K.W. Because the evidence Culver claims he needs to rebut is irrelevant, and the district court allowed Culver to cross-examine K.W. on every issue that had any potential relevance to his defense, we conclude that Culver has not shown that the district court's application of Rule 412 violated his constitutional rights.

The district court did not abuse its discretion by excluding evidence of K.W.'s prior sexual history, but assuming *arguendo* that the district court erred by excluding evidence of K.W.'s prior sexual history, we conclude that any such error was harmless because the evidence establishing Culver's guilt was overwhelming. *See* Fed. R. Crim. P. 52(a); *United States v. Harriston*, 329 F.3d 779, 789 (11th Cir. 2003) (explaining that error is harmless "where there is overwhelming evidence of guilt.").

3. Request for Additional Photographs

Culver next contends that the district court abused its discretion by denying his request for additional photographs of K.W. and Sharon Brasuell. For Culver's state trial, the prosecution took two sets of photographs of K.W., one on November 12, 2003, and one on September 9, 2004. The state also took a set of photographs

16

of Brasuell on September 9, 2004.  Nonetheless, Culver asserts that he needed additional photographs of K.W. and Brasuell to present his defense because the available photographs do not adequately depict all of the relevant areas of the bodies of K.W. and Brasuell.

The second segment of the 8mm videotape displays the buttocks and the backs of the thighs of a female lying on her left side.  The female depicted in this portion of the tape has a series of dark spots on the backs of her thighs.  Culver claims that he needed additional photos of the backs of the thighs of K.W. and Brasuell to show that the female depicted in the second segment of the tape is not K.W.  But the government did not try to prove that the second segment of the tape is illegal child pornography.[7]  Moreover, some of the photos taken of K.W. for the state trial clearly show that K.W. did not have dark spots on the backs of her thighs.  Culver has not made any credible argument that the available photographs of K.W. and Brasuell do not adequately display the areas of the body that were visible on the female in the first segment of the tape.[8]  The district court did not

_____

[7] Culver argues that the government unfairly changed its position at trial in a manner that caused irreparable damage to his defense.  At a pretrial hearing before a magistrate judge, the government indicated that the tape depicted only one female, but the government conceded at trial that K.W. could not identify herself in the second segment of the tape.  The government's change in position merely reflected its candid assessment of what proof it could offer at trial based on the testimony that the government's witness would give.

[8] We note that pictures taken in 2007, approximately four years after the production of the tape, would have had little if any probative value in helping the jury to identify the female on

17

abuse its discretion by denying Culver's request for additional pictures.

4.  Prior Felony Convictions

Culver argues that the district court erred by ruling that the government could present evidence of Culver's state court felony convictions for possession of child pornography to impeach Culver and any character witnesses that Culver might have presented.  Because Culver did not testify, he may not raise a claim that the district court erroneously determined that his prior convictions could be used to impeach any testimony that he might have given.  *Luce v. United States*, 469 U.S. 38, 43, 105 S. Ct. 460, 464 (1984) ("[T]o raise and preserve for review the claim of improper impeachment with a prior conviction, a defendant must testify."). Similarly, because Culver did not call any character witnesses, we will not address his claim that the district court erroneously determined that his prior convictions could be used to impeach the testimony of any character witnesses that he might have called.  *See United States v. LeCroy*, 441 F.3d 914, 928 (11th Cir. 2006) ("The defendant could have called his witnesses, had them testify, and then objected at the proper time . . . .").

5.  Cumulative Error

Culver contends that all of the alleged evidentiary errors made by the district

---

the tape.

court had an aggregate prejudicial effect that amounted to the denial of a fair trial. This contention is clearly without merit in light of our conclusion that the district court did not abuse its discretion in making any of the evidentiary rulings challenged by Culver. *See United States v. Waldon*, 363 F.3d 1103, 1110 (11th Cir. 2004) (concluding that cumulative error doctrine is inapplicable where district court commits no individual errors).

C. *Jury Instruction*

Culver asserts that the district court erred by failing to give his requested jury instruction on circumstantial evidence. "We review a district court's refusal to give a requested jury instruction for abuse of discretion." *United States v. Klopf*, 423 F.3d 1228, 1241 (11th Cir. 2005). We will find an abuse of discretion where "'(1) the requested instruction was substantively correct, (2) the court's charge to the jury did not cover the gist of the instruction, and (3) the failure to give the instruction substantially impaired the defendant's ability to present an effective defense.'" *Id.* (quoting *United States v. Roberts*, 308 F.3d 1147, 1153 (11th Cir. 2002)). Culver's requested instruction dealt with the topics of circumstantial evidence and reasonable doubt, and the district court's instructions to the jury adequately covered both topics. Accordingly, we conclude that the district court did not abuse its discretion in rejecting Culver's requested instruction.

19

D. *Sufficiency of the Evidence*

Culver contends that the government did not present evidence sufficient to establish that he violated § 2251(a). We review a sufficiency of the evidence challenge *de novo*, considering the evidence in the light most favorable to the government and resolving all reasonable inferences and credibility determinations in favor of the jury's verdict. *United States v. Robertson*, 493 F.3d 1322, 1329 (11th Cir. 2007).

The key issue in this case is whether the female depicted on the tape and in the photographs was a minor, and Culver does not dispute that K.W. was a minor when the tape and photographs were produced. Sharon Brasuell and K.W. testified that K.W. is the female on the tape and in the photographs. Brasuell identified K.W. by her slender body, her long slender hands, the style and condition of her fingernail polish, and a distinctive red spot on her right hand. K.W. identified herself by her body shape, her shaved pubic region, the style and condition of her fingernail polish, and a distinctive red spot on her right hand. The jury also viewed pictures of K.W. taken for comparison purposes and directly observed K.W.'s hands in court.

In addition to the direct evidence identifying K.W. as the female on the tape and in the photographs, the government also presented substantial circumstantial

evidence indicating that Culver produced illegal visual depictions of K.W. A unique set of blue sheets with snowflakes and polar bears is visible on the tape and in the photographs. Brasuell testified that she purchased these sheets for Culver for use in the master bedroom at his Cullman County lake house. K.W. testified that, at some point in early 2003, she had fallen asleep on the couch at the Cullman County lake house and woke up in the master bedroom. K.W. could not remember how she had gotten to the master bedroom and testified that she experienced a sensation of numbness in her pubic area when she awoke. As discussed above, the government presented convincing evidence that Culver knew how to render K.W. unconscious.

Viewing all of the evidence presented by the government in the light most favorable to the government and drawing all reasonable inferences in favor of the jury's verdict, we are convinced that the government presented evidence sufficient to support a finding of guilt beyond a reasonable doubt.

E. *Sentencing*

Culver argues that the sentence imposed by the district court violates the spirit of *United States v. Booker*, 543 U.S. 220, 125 S. Ct. 738 (2005), because the district court considered allegations that Culver drugged and shocked K.W.—conduct with which the government did not charge Culver in an

21

indictment, upon which the jury did not pass in its verdict, and of which a state court jury acquitted Culver. Culver contends that the district court's consideration of this acquitted conduct violates the Due Process Clause of the Fifth Amendment and the Double Jeopardy Clause of the Sixth Amendment. Culver's arguments are without merit.

It is well-settled that a sentencing court may consider conduct for which a defendant has been acquitted if the government proves the conduct in question by a preponderance of the evidence. *United States v. Duncan*, 400 F.3d 1297, 1304 (11th Cir. 2005); *see also United States v. Barakat*, 130 F.3d 1448, 1452 (11th Cir. 1997) (citing *United States v. Watts*, 519 U.S. 148, 153, 117 S. Ct. 633, 636 (1997); *United States v. Frazier*, 89 F.3d 1501, 1506 (11th Cir. 1996); *United States v. Averi*, 922 F.2d 765, 766 (11th Cir. 1991)). *Booker* merely requires that consideration of acquitted conduct does not result in "a sentence that exceeds what is authorized by the jury verdict." *Duncan*, 400 F.3d at 1304. The district court properly considered evidence that Culver drugged and shocked K.W.,[9] and the sentence imposed by the district court did not exceed the sentence authorized by the jury verdict.[10] Thus, we conclude that the sentence imposed by the district

---

[9] Culver does not argue that the government did not meet its burden of proving the acquitted conduct by a preponderance of the evidence.

[10] The jury found Culver guilty of five counts of violating 18 U.S.C. § 2251(a). Each count carries a maximum sentence of 30 years. 18 U.S.C. § 2251(e). Culver's sentence did not

22

court did not violate Culver's constitutional rights.

Culver also argues that his sentence is substantively unreasonable. We disagree. We review the reasonableness of a sentence under "'a deferential abuse-of-discretion standard.'" *United States v. Pugh*, 515 F.3d 1179, 1189 (11th Cir. 2008) (quoting *Gall v. United States*, 552 U.S. 38, 40, 128 S. Ct. 586, 591 (2007)). To determine whether a sentence is substantively reasonable, we consider whether, under the totality of the circumstances, the sentence achieves the sentencing goals stated in 18 U.S.C. § 3553(a). *Pugh*, 515 F.3d at 1191; *United States v. Talley*, 431 F.3d 784, 788 (11th Cir. 2005). Based on our review of the record, we are convinced that the sentence imposed by the district court will achieve the sentencing goals stated in § 3553(a) and that the district court did not abuse its discretion in sentencing Culver.

## IV. CONCLUSION

For the foregoing reasons, we affirm Culver's convictions and sentences.

AFFIRMED.

exceed the statutory maximum on any single count.