[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 19-15007
Non-Argument Calendar

_____

D.C. Docket No. 4:18-cr-00268-LGW-CLR-1


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JEFFERY ALLMOND, JR.,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Georgia

_____

(June 26, 2020)

Before JILL PRYOR, BRANCH and HULL, Circuit Judges.

PER CURIAM:

After a jury trial, Jeffery Allmond, Jr. appeals his conviction for knowingly persuading, inducing, enticing, or coercing a minor to engage in illegal sexual activity, in violation of 18 U.S.C. § 2422(b).  On appeal, Allmond argues that the district court abused its discretion (1) by denying his motion to dismiss the § 2422(b) charge as unconstitutional as applied to him, and (2) by excluding evidence about the victim's other sexual behavior.[1]  Allmond also challenges the sufficiency of the evidence to support his conviction.  After review, we affirm.

## I.  BACKGROUND FACTS

### A.    Offense Conduct

Two minors, Morgan and Emilee,[2] shared an interest in German Shepherd dogs and lived on Fort Stewart, a military base in Georgia.  Morgan and Emilee were close friends and 15 and 16 years old, respectively.  However, they lied about their ages to create accounts on Tinder, a dating application, which required that its users be 18 years or older.

In July 2018, Emilee noticed defendant Allmond's Tinder account, which featured photos of his German Shepherds.  Allmond was a 24-year-old police officer with the Richmond Hill Police Department.  Emilee and Allmond began

---

[1]The jury acquitted Allmond of the charge of possessing child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B).

[2]We refer to the victims by their first names, as the parties did at trial.

chatting on Tinder, and she wanted their dogs to meet.

Emilee told Morgan about Allmond's dogs, and the three began communicating on Snapchat, a social media and messaging application, about a wide variety of topics. Allmond falsely told the girls that he was a canine handler for the police department and that his dogs were police dogs. Morgan and Emilee told Allmond that they were 16 and 17 years old, respectively. Eventually, the three agreed to meet. Allmond insisted that they meet at night because his police career could be on the line, and he did not want anyone to know.

Their first meeting began late at night around July 4, 2018. Morgan and Emilee snuck out of their homes and hopped the fence that surrounded the military base. Around 1:30 a.m., Allmond picked the girls up at a nearby gas station and drove them 30 minutes to his apartment. After playing with Allmond's dogs and eating cookies, the three went into Allmond's bedroom. The girls got undressed, and Morgan told Allmond that she liked handcuffs. In response, Allmond took two pairs of handcuffs from his police uniform and handcuffed the girls as they lay naked side-by-side on the bed. Allmond kissed Morgan and Emilee, digitally penetrated their vaginas, and performed oral sex on them. He then had vaginal sex with Emilee while digitally penetrating Morgan's vagina. Afterwards, Allmond dropped the girls off near their homes, and they snuck back inside around 4:30 a.m.

After that night, Morgan and Emilee continued to talk to Allmond and met

3

him a second time, again sneaking out late at night to go to his apartment.[3]  Again,
Allmond kissed Morgan and Emilee, digitally penetrated their vaginas, performed
oral sex on them, and had sex with Emilee while Morgan lay beside her.

At some point after the first or second meeting, Allmond discovered on
Facebook, a social media application, that Morgan had just turned 15 years old.[4]
Allmond confronted Morgan about this information, and she confirmed that she
was 15 years old.  Allmond asked Morgan whether she was "okay with being with
a guy eight years older," and Morgan said yes.

Nevertheless, Allmond planned a third meetup with Morgan and Emilee.
Beforehand, he sent Morgan a photograph of a bottle of personal lubricant, which
she understood to mean that he wanted to use it to have sex with her.  At the third
meetup, which again occurred at Allmond's apartment late at night, Allmond
digitally penetrated Morgan's and Emilee's vaginas, performed oral sex on them,
and had sex with Emilee while Morgan lay beside her.  Allmond asked Morgan to
have sex with him numerous times, but Morgan refused.  Allmond tried to
encourage her, saying, "Please, come on, come on; I'm not going to get you

---

[3]Morgan and Emilee had slightly conflicting stories about the logistics of the meetups.
Emilee testified that they were picked up by Allmond the first and second times to go to his
apartment but drove themselves the third time.  Morgan testified that they were picked up the
first and third times, but drove themselves the second time.  Ultimately, these discrepancies do
not affect the outcome of this case.

[4]Although slightly contentious, some evidence showed that Allmond also had seen a
picture of Morgan's learners permit at some point, which reflected that she was 15 years old.

pregnant; just one time . . .  I've never gotten a girl pregnant; you can trust me; you can trust me."  Allmond stopped his pleas after Morgan refused, got mad, and told him to stop.  At trial, Morgan admitted that the only person who persuaded, induced, enticed, or coerced her to go to Allmond's apartment was Emilee the first and third times, and Morgan decided on her own to go the second time.

Later, Allmond voluntarily participated in an interview with the Georgia Bureau of Investigation.  Allmond was nervous and concerned about his job.  He admitted that, on multiple occasions over four weeks, he had sexual intercourse with Emilee and penetrated Morgan's vagina with his mouth and fingers.  He admitted that Morgan looked young, and he had suspicions about her age, especially after checking her Facebook page.  Allmond also admitted that he met up with the girls after discovering that Morgan was 15 years old and possibly digitally penetrated her vagina during that encounter.

## B.    Indictment and Pre-Trial Motions

Allmond was charged with knowingly persuading, inducing, enticing, and coercing Morgan, who was 15 years old at the time, to engage in illegal sexual activity—that being child molestation under Georgia law—in violation of 18 U.S.C. § 2422(b).[5]  Before trial, Allmond filed motions to dismiss that charge and

---

[5]Allmond was not charged with enticing Emilee to engage in illegal sexual activity. Emilee, who was 16 years old at the time, did not qualify as a victim under Georgia's child molestation statute.  O.C.G.A. § 16-6-4(a)(1) (providing that a defendant commits child

to introduce evidence of Morgan's and Emilee's past sexual behavior, under Federal Rule of Evidence 412(b)(1)(C).

In his Rule 412(b)(1)(C) motion, Allmond sought to introduce evidence that Morgan and Emilee had an "extensive pattern of lying to men engaged in law enforcement about their age[s] for the purpose of engaging in sexual activities."[6] Allmond identified three male law enforcement officers who interacted with Morgan and highlighted recorded statements from two officers. One officer met Morgan on Snapchat, and Morgan spontaneously sent him explicit photographs of her breasts and vagina. That officer did not realize that Morgan was under 18 years old until she told him a week later that she was 16. Another officer also met Morgan on Snapchat, and Morgan later told him that she was only 16 years old. Allmond also sought to introduce Morgan's and Emilee's recorded statements regarding their interactions with Allmond and past sexual encounters with law enforcement officers. Emilee stated that Morgan "always hooked up with" police officers. Morgan admitted she sent nude photographs to men and "messed around" with older guys for pleasure.

The magistrate judge entered a combined "Sealed Order and Report and

---

molestation when he does any immoral or indecent act to or with a child under the age of 16 years with the intent to arouse or satisfy his or the child's sexual desires).

[6]Allmond sought to introduce evidence that focused on Morgan's sexual activity, even though he argued that the evidence pertained to both girls.

Recommendation" on the motions.  In the order, the magistrate judge denied

Allmond's Rule 412(b)(1)(C) motion as to evidence of Morgan's or Emilee's

relationships with other men or misrepresentations of their ages to other men

because such evidence was irrelevant and prejudicial.  The magistrate judge

granted in part Allmond's Rule 412(b)(1)(C) motion as to Morgan's or Emilee's

statements about their sexual relationships with Allmond.  More specifically, if the

government offered evidence of Allmond's sexual activities with Morgan and

Emilee in its case in chief, Allmond would be allowed to cross-examine them as to

any conflicting statements regarding those activities.

In the report and recommendation, the magistrate judge recommended

denying Allmond's motion to dismiss the § 2422(b) charge.  Allmond had argued

that § 2422(b) is unconstitutional as applied to him.[7]  Over Allmond's objections,

the district court adopted the magistrate judge's recommendation and denied

Allmond's motion to dismiss.

## C.    Trial and Cross-Examination of Morgan

At trial, the government presented evidence of the facts recounted above,

including (1) testimony from Morgan, Emilee, Allmond's former supervisor, a

---

[7]Although Allmond also argued in the district court that § 2422(b) was facially unconstitutional, on appeal he argues only that it is unconstitutional as applied.  Accordingly, his facial challenge is abandoned.  See United States v. Grimon, 923 F.3d 1302, 1308 (11th Cir.), cert. denied, 140 S. Ct. 536 (2019) (explaining that issues not raised on appeal are deemed abandoned).

computer forensics expert, Allmond's former sex crimes instructor, and the officer who investigated this case, and (2) birth certificates, driver's licenses, Tinder account records, Snapchat account records, photographs of Allmond's apartment and handcuffs, and Allmond's recorded interview, among other things. During cross-examination of Morgan, defense counsel asked whether she was scared about going to Allmond's apartment the first time. Morgan responded, "I was a little scared because I didn't know what I was doing. I [had] never done anything like that before." At a sidebar conference, defense counsel requested that the district court allow him to impeach Morgan with the evidence that she had engaged in sexual conduct with other men like Allmond before. The government opposed the request, arguing that Morgan was referring to never meeting a man in the middle of the night. The district court denied the defense's request because Morgan's statement was ambiguous and the defense's further questioning her about what she meant would be purposefully asking her to open the door to inadmissible evidence.[8]

---

[8]The following exchange occurred in the sidebar conference:
 [Defense counsel]: The fact that she's never done this before, I'm going to ask [t]he Court to allow me to go into the fact that she has done this before.

[Government counsel]: In all due respect, I believe she's referring to meeting [Allmond] in the middle of the night.

[Defense counsel]: You don't know what she meant.

**D.      Motions for Judgment of Acquittal, Conviction, and Sentence**

At the close of the government's evidence, the defense rested.  Allmond moved for a judgment of acquittal, arguing that Morgan was never persuaded, induced, enticed, or coerced to do anything by anyone other than Emilee.  The district court denied the motion.  The jury found Allmond guilty of the § 2422(b) charge.  Allmond again moved for a judgment of acquittal, arguing, inter alia, that Morgan had testified that Allmond had not persuaded, induced, enticed, or coerced her to do anything.  The district court denied the motion.  The district court sentenced Allmond to 121 months' imprisonment.[9]

## II. DISCUSSION

**A.      Motion to Dismiss**

Section 2422(b) criminalizes the sexual exploitation of minors, as follows:

> Whoever . . . knowingly persuades, induces, entices, or coerces any individual who has not attained the age of 18 years, to engage in prostitution or any sexual activity for which any person can be charged with a criminal offense, or attempts to do so, shall be fined . . . and imprisoned . . . .

---

[The district court]: I don't know what she means by this, and I guess if you kept asking her and directing her into opening that door, eventually she would but, of course, I'm not going to let you do that . . . .  I'm not going to let you purposefully make her open that door.  She has not at this point.  None of us know what she means by this.

     If I continue to let you down this, eventually she might do that, and that would be ridiculous for me to let you do that and you know it, so let's move on to things that you've agreed are proper to ask about.

[9]In this direct appeal, Allmond does not challenge his sentence.

9

18 U.S.C. § 2422(b); see also O.C.G.A. § 16-6-4(a) (criminalizing the sexual molestation of minors younger than 16 years old). Allmond argues that § 2422(b) is unconstitutional as applied to him because he did not know that Morgan was underage, and both girls lied about their ages.[10]

In United States v. Daniels, this Court held that a defendant's knowledge of the victim's age is not an essential element of a § 2422(b) crime. 685 F.3d 1237, 1248-50 (11th Cir. 2012). Accordingly, even if Allmond was confused or misled about Morgan's age, the government was not statutorily required to prove that Allmond knew that Morgan was underage. See id.

Allmond attempts to distinguish Daniels by noting that the defendant in that case prostituted the minor victim, and prostitution is a crime regardless of whether a defendant knows the victim's age. This distinction makes no difference because both Allmond and the defendant in Daniels were charged with the federal offense of enticing a minor to engage in "any sexual activity for which any person can be charged with a criminal offense" under § 2422(b), and whether Allmond knew that Morgan was a minor does not affect his federal criminal liability under § 2422(b).

---

[10]This Court reviews a district court's denial of a motion to dismiss an indictment for abuse of discretion. United States v. Evans, 476 F.3d 1176, 1178 (11th Cir. 2007). However, we review the constitutionality of a statute de novo with a strong presumption of validity. See United States v. Ruggiero, 791 F.3d 1281, 1284 (11th Cir. 2015).

See id. at 1240, 1249.[11]

We recognize Allmond's argument that, even if knowledge of the victim's age is not an element of a § 2422(b) crime, prosecution of that crime without proof of his knowledge of the victim's age violated his due process rights.[12]  Allmond's constitutional claim fails because Congress has the power to exclude knowledge from the definition of statutory crimes, and due process does not require proof that a defendant knew the victim was underage.  See id. at 1248 ("[O]ur decision to reject a knowledge [of age] requirement to convict under § 2422(b) is consistent with congressional intent to protect the most vulnerable among us."); see also United States v. Ruggiero, 791 F.3d 1281, 1287-88 (11th Cir. 2015) ("[T]he Due Process Clause has rarely concerned itself with limiting Congress's wide latitude . . . to declare an offense and to exclude elements of knowledge and diligence from its definition.").  In any event, we note the trial evidence showed that Allmond did know Morgan's age when he committed the crime because he

---

[11]Allmond argues that it "defies logic" that he could be found guilty of the completed offense of § 2422(b) without proof that he knew his victim's age, while a charge for attempt would have required proof of knowledge, pursuant to United States v. Meek, 366 F.3d 705, 718 (9th Cir. 2004).  However, this Court in Daniels held that, notwithstanding the holding in Meek, a completed violation of § 2422(b) does not require knowledge of age.  See Daniels, 685 F.3d at 1248, 1249 n.15 (distinguishing Meek because it was "decided in the context of attempt rather than that of a completed offen[s]e").  Accordingly, we are bound by Daniels.

[12]Allmond's appellate brief does not explicitly identify which constitutional right was allegedly violated.  Based on his pleadings in the district court and arguments here, it appears that he is arguing that his due process rights were violated.

11

digitally penetrated and performed oral sex on her after discovering on Facebook that she was 15 years old.

## B.    Rule 412(b)(1)(C) Evidence

Allmond argues that his Sixth Amendment confrontation rights were violated when the district court prevented him from introducing Rule 412(b)(1)(C) evidence because Morgan and Emilee had a "calculated plan to lie about their ages to seduce men aged 18 and older [who] worked as police officers." He argues that evidence about the minor victims' pattern of lying to similar men was crucial to proving their lack of credibility.

The district court did not abuse its discretion by denying Allmond's Rule 412(b)(1)(C) motion.[13]  Rule 412 provides that, in a criminal proceeding charging a defendant with sexual misconduct, the following evidence is not admissible: (1) "evidence offered to prove that a victim engaged in other sexual behavior"; or (2) "evidence offered to prove a victim's sexual predisposition." Fed. R. Evid. 412(a).  "[Rule 412] aims to safeguard the alleged victim against the invasion of privacy, potential embarrassment and sexual stereotyping that is associated with public disclosure of intimate sexual details and the infusion of sexual innuendo

---

[13]This Court "review[s] a district court's application of Rule 412 for abuse of discretion." United States v. Culver, 598 F.3d 740, 749 (11th Cir. 2010).  However, "[w]hether the exclusion of evidence violated a constitutional guarantee is a legal question reviewed de novo." United States v. Sarras, 575 F.3d 1191, 1209 n.24 (11th Cir. 2009).

12

into the factfinding process." United States v. Sarras, 575 F.3d 1191, 1212 n.25 (11th Cir. 2009) (quotation marks omitted). In addition, "[b]y affording victims protection in most instances, the rule also encourages victims of sexual misconduct to institute and to participate in legal proceedings against alleged offenders." Id. (quotation marks omitted).

Nevertheless, Rule 412(b)(1)(C) provides that the district court still "may admit . . . evidence whose exclusion would violate the defendant's constitutional rights." Fed. R. Evid. 412(b)(1)(C). Thus, Rule 412(b)(1)(C) is "a narrow exception" to the "broad general principle" that evidence of a victim's prior sexual history is inadmissible. United States v. Culver, 598 F.3d 740, 749 (11th Cir. 2010).

To determine the admissibility of a victim's other sexual behavior under Rule 412(b)(1)(C), this Court begins with the premise that a defendant has a constitutional right, under the Fifth and Sixth Amendments, to introduce evidence in his defense. Id. The Sixth Amendment guarantees that every accused has the right to confront the witnesses against him. United States v. Yates, 438 F.3d 1307, 1312 (11th Cir. 2006) (en banc). "The main and essential purpose of confrontation is to secure for the [defendant] the opportunity of cross-examination." United States v. Baptista-Rodriguez, 17 F.3d 1354, 1366 (11th Cir. 1994) (quotation marks omitted).

13

A defendant's right to cross-examine witnesses, however, is not without limitation.  Id.  Instead, "the Sixth Amendment guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish."  United States v. Beale, 921 F.2d 1412, 1424 (11th Cir. 1991) (quotations marks omitted).  "The test for the Confrontation Clause is whether a reasonable jury would have received a significantly different impression of the witness' credibility had counsel pursued the proposed line of cross-examination."  United States v. Taylor, 17 F.3d 333, 340 (11th Cir. 1994) (quotation marks omitted).  "A defendant's confrontation rights are satisfied when the cross-examination permitted exposes the jury to facts sufficient to evaluate the credibility of the witness and enables defense counsel to establish a record from which he properly can argue why the witness is less than reliable."  Baptista-Rodriguez, 17 F.3d at 1371.  After cross-examination has satisfied the defendant's confrontation rights, further questioning is within the district court's discretion.  Taylor, 17 F.3d at 340.

Allmond's proffered evidence about the victims' misrepresentations of their ages to other men was irrelevant because, as discussed above, the government was not required to prove that Allmond knew Morgan was underage.  See Daniels, 685 F.3d at 1248-50.  The district court also gave Allmond a constitutionally adequate opportunity to cross-examine Morgan and Emilee on issues relevant to Allmond's

14

defense and to attack their credibility.  See Beale, 921 F.2d at 1424.  On cross-examination, Allmond elicited testimony from both girls that they lied about their ages to create Tinder accounts and that they initially lied to Allmond about their ages.  Even if Allmond had been allowed to cross-examine Morgan regarding her lying about her age to other police officers, the jury would not have "received a significantly different impression of [her] credibility" because the jury already heard that Morgan admitted to lying about her age to Allmond.  See Taylor, 17 F.3d at 340.  Thus, the exclusion of the evidence did not violate Allmond's constitutional right to challenge Morgan's credibility and did not fall within Rule 412(b)(1)(C)'s narrow exception.[14]  See Culver, 598 F.3d at 749; Baptista-Rodriguez, 17 F.3d at 1371.

Allmond also argues that the district court abused its discretion by preventing him from continuing his questioning of Morgan, when she stated she had never done anything like this before.  However, the district court found that it was unclear whether Morgan was referring to meeting a stranger in the middle of the night to go to his apartment 30 minutes away or to having a sexual encounter

---

[14]Allmond never sought to introduce Morgan's and Emilee's sexual histories alone per se.  Rather, Allmond sought to show that the girls lied about their ages in order to engage in sexual activity with other men.  Of course, this still would have had the same effect of introducing the girls' prior sexual conduct with other men.

15

with a police officer that she met online.[15]  Given the defense's thorough cross-examination of Morgan before that point, we cannot say the district court abused its discretion in concluding Morgan's ambiguous comment had not yet opened the door to her prior sexual conduct with other men and that defense counsel's further questioning along that line would purposefully make her open that door.

## C.    Sufficiency of the Evidence for a § 2422(b) Conviction

To convict Allmond under § 2422(b), the government needed to prove beyond a reasonable doubt that Allmond knowingly persuaded, induced, or enticed Morgan to engage in illegal sexual activity.  United States v. Murrell, 368 F.3d 1283, 1286 (11th Cir. 2004).[16]  "We have held that the terms persuade, induce, and entice in § 2422(b) should be given their ordinary meaning."  United States v. Rutgerson, 822 F.3d 1223, 1232 (11th Cir. 2016).  "Persuade" means to "'[w]in over by an appeal to one's reason and feelings (as into doing or believing

---

[15]In his reply brief, Allmond submits that Morgan and Emilee previously spent the night with another man named Nick, in addition to the other three men whose statements he sought to introduce under Rule 412(b)(1)(C).  However, Allmond's Rule 412(b)(1)(C) motion did not seek to introduce evidence about Nick in the district court, and, on appeal, Allmond raises this evidence for the first time in his reply brief.  Thus, we need not, and do not, address it.  United States v. Mathews, 874 F.3d 698, 708 (11th Cir. 2017) (declining to consider an argument raised for the first time in a reply brief).

[16]This Court reviews de novo the sufficiency of evidence supporting a conviction.  United States v. Gamory, 635 F.3d 480, 497 (11th Cir. 2011).

We need not address whether Allmond's conduct amounted to coercion because the district court charged the jury that Allmond could be found guilty if the government proved beyond a reasonable doubt that he "knowingly persuaded, induced, enticed, or coerced [Morgan] to engage in sexual activity, as charged."

16

something).'"  Id. at 1232-33 (quoting Persuade, Merriam-Webster Unabridged

Dictionary (3d ed. 2015)).  "Induce" unambiguously means, of relevance, "[t]o

stimulate the occurrence of" or "cause."  Murrell, 368 F.3d at 1287 (quoting The

Am. Heritage Dictionary of the English Language 671 (William Morris ed.,

Houghton Mifflin Co. 1981)).  "Entice" means to "draw on by arousing hope or

desire."  Rutgerson, 822 F.3d at 1233 (quoting Entice, Merriam-Webster

Unabridged Dictionary (3d ed. 2015)).

When reviewing sufficiency of the evidence, we view the evidence in the

light most favorable to the government.  United States v. Hunt, 526 F.3d 739, 744

(11th Cir. 2008).  Evidence is sufficient to sustain a conviction if "any rational trier

of fact could have found the essential elements of the crime beyond a reasonable

doubt."  Id. at 745 (quotation marks omitted).  "The evidence need not be

inconsistent with every reasonable hypothesis other than guilt."  Id.  Rather, the

jury may choose from several reasonable conclusions that could be drawn from the

evidence.  Id.

Here, the trial evidence showed that 24-year-old Allmond chatted online

with 15-year-old Morgan and 16-year-old Emilee.  Allmond picked the minor girls

up in the middle of the night on more than one occasion and drove them to his

apartment.  Over the course of three meetings, Allmond repeatedly penetrated

Morgan's vagina with his fingers and mouth and encouraged her to have sexual

17

intercourse.  See Murrell, 368 F.3d at 1287; Rutgerson, 822 F.3d at 1232-33.

Allmond engaged in this conduct after discovering—sometime after the first or

second meeting, but before the third meeting—that Morgan was only 15 years old.

Given the record evidence, viewed in the light most favorable to the government,

Allmond failed to show that no rational trier of fact could have found him guilty

beyond a reasonable doubt of knowingly persuading, inducing, or enticing Morgan

to engage in illegal sexual activity.  See Hunt, 526 F.3d at 745.

Allmond argues that Morgan's admission at trial that only Emilee persuaded,

induced, enticed, or coerced her to go to Allmond's apartment established that he

did not persuade, induce, entice, or coerce Morgan's sexual conduct.  However, the

jury could have reasonably found that Morgan's admission pertained to her

decision to go to Allmond's apartment, not to her decision to engage in sexual

activity with him or the specific nature of the sexual activity.  Indeed, although

Allmond was ultimately unsuccessful in convincing Morgan to engage in sexual

intercourse, Allmond did induce Morgan to allow him to penetrate her vagina with

his fingers and mouth.  Given the totality of the record, there was ample evidence

for the jury to conclude that Allmond knowingly persuaded, induced, or enticed

Morgan to engage in sexual activity once she was at his apartment.

### III. CONCLUSION

In sum, the district court did not abuse its discretion in denying Allmond's

18

motions to dismiss the § 2422(b) charge and to introduce Rule 412(b)(1)(C) evidence.  Further, sufficient evidence supported his conviction.  Accordingly, we affirm Allmond's § 2422(b) conviction.

**AFFIRMED.**