[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 10-14794
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JULY 2, 2012
JOHN LEY
CLERK

D.C. Docket No. 1:08-cr-20672-KMM-1

UNITED STATES OF AMERICA,

 Plaintiff - Appellee,

versus

ROBERT DANIELS,
a.k.a. Twin T,

 Defendant - Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(July 2, 2012)

Before TJOFLAT, PRYOR and FAY, Circuit Judges.

PER CURIAM:

Following a jury trial, Robert Daniels, a/k/a "Twin T" ("Daniels"), appeals his convictions and sentences for the following: 1) using a facility and means of interstate commerce to persuade, induce, entice, or coerce any individual who had not attained the age of eighteen, to engage in prostitution and any sexual activity for which any person can be charged with a criminal offense, in violation of 18 U.S.C. § 2422(b) ("Count I"); and 2) knowingly transporting an individual in interstate commerce with the intent that she engage in prostitution and any sexual activity for which any person can be charged with a criminal offense, in violation of 18 U.S.C. §§ 2421-22 ("Count III").[1] Daniels was sentenced to concurrent 78-month terms as to both Counts I and III, to be served consecutively to a prior sentence imposed by the Eastern District of Michigan.[2] On appeal, Daniels raises six issues. The primary issue is one of first impression for the Eleventh Circuit: whether a conviction under 18 U.S.C. § 2422(b) requires the government to prove

---

[1] Daniels was found not guilty of Count II of his three-count indictment and therefore that count is not addressed in this opinion.

[2] On July 7, 2011, the Sixth Circuit affirmed Daniels's convictions and sentences on one count of manufacturing child pornography, in violation of 18 U.S.C. § 2251(a), one count of distributing child pornography, in violation of 18 U.S.C. § 2252A(a)(2)(A), one count of transporting a minor for purposes of prostitution, in violation of 18 U.S.C. § 2423(a), and one count of sex trafficking of children, in violation of 18 U.S.C. § 1591(a). United States v. Daniels, 653 F.3d 399, 404 (6th Cir. 2011). The court vacated his conviction for engaging in a child exploitation enterprise, in violation of 18 U.S.C. § 2252A(g)(2), finding insufficient evidence that Daniels acted in concert with three or more other persons in committing the predicate felonies underlying the charge. Id. Daniels was sentenced to multiple concurrent terms, the longest of which was 420 months. Id.

2

that the defendant knew that the victim was a minor. We decline to find knowledge a requirement under § 2422(b). It is our conclusion that this statute is written for the protection of minors caught in the web of these illicit activities, rather than for offenders choosing to turn a blind eye to the age of the victims they transport. Moreover, we find no merit in the other five issues Daniels raises and affirm his convictions.

## I.      Background and Procedural History

On July 18, 2008, a grand jury in the Southern District of Florida returned a three-count indictment against Daniels, charging as follows:

Count I: From in or about September 2004, . . . through on or about October 30, 2004, in Miami-Dade and Broward Counties and elsewhere, Daniels, using a facility and means of interstate commerce, did knowingly persuade, induce, entice, and coerce an individual who had not attained the age of eighteen ("A.W."),[3] to engage in prostitution and any sexual activity for which a person can be charged with a criminal offense, in violation of 18 U.S.C. § 2422(b).

Count II: On or about October 30, 2004, in Miami-Dade and Broward Counties in the Southern District of Florida and elsewhere, Daniels did knowingly, in and affecting interstate commerce, recruit, transport and provide by any means, A.W., knowing she had not attained the age of eighteen and would be caused to engage in a commercial sex act, in violation of 18 U.S.C. § 2421.

Count III: On or about October 30, 2004, in Miami-Dade and Broward

_____

[3] Based upon her birth certificate, A.W. was born on April 6, 1990, and thus would have been 14 years old in October 2004.

Counties, in the Southern District of Florida and elsewhere, Daniels did knowingly transport A.W. in interstate commerce with the intent that she engage in prostitution, and in any sexual activity for which a person can be charged with a criminal offense, in violation of 18 U.S.C. §§ 2421-22.

After the government's case in chief, Daniels moved for a judgment of acquittal, arguing that there was no evidence showing that Daniels knew or believed that A.W. was under eighteen. The court denied that motion, and the defense subsequently rested without presenting any evidence. The jury then convicted Daniels on Counts I and III, and acquitted him on Count II. On September 30, 2010,[4] the district court sentenced Daniels to 78 months' imprisonment, to run consecutively to an undischarged term of imprisonment from his convictions in the Eastern District of Michigan.[5] This appeal followed.

## A.    Government's Evidence at Trial

As we must, we consider the factual testimony adduced at trial in the light most favorable to the government. See United States v. Glen-Archila, 677 F.2d

---

[4] Daniels's sentencing hearing took place on September 30, 2010. At the hearing, Daniels objected to the statement in the PSI stating that Daniels and A.W. had a conversation during which Daniels learned that A.W. was a minor. Daniels also objected to the two-level enhancement for unduly influencing a minor to engage in a commercial sex act. Finally, he urged the district court to impose a sentence concurrent to his sentence in the Eastern District of Michigan, because his conduct with A.W. was listed as relevant offense conduct in that case.

[5] The district court in the Southern District of Florida further imposed concurrent 25-year terms of supervised release on each count and ordered Daniels to pay a $200 special assessment.

4

809, 812 (11th Cir. 1982). Accordingly, the record reflects the following facts:

At all times relevant to this case, Daniels was a pimp. Beginning in late 2003, Daniels began managing one prostitute, Stephanie Head, a/k/a "Chocolate" ("Head"). Daniels managed Head's prostitution activities from the time she was 18 years old. At that time, she was working as a prostitute in Detroit. Daniels also managed other prostitutes. In exchange for the money each prostitute gained from selling her body, Daniels would provide housing, food, clothes, and some money. Eventually, Head became Daniels's "bottom girl," meaning that she earned the most money and was respected and trusted above Daniels's other prostitutes.

In September 2004, Daniels and Head drove from Detroit, Michigan to Miami, Florida for purposes of prostitution. They were accompanied by another pimp, Dennis Paige, a/k/a "Detroit Slim" ("Paige"), and a prostitute he managed named "Womp." Head and Womp engaged in prostitution along the way in such cities as Atlanta, Orlando, and Miami.

The group reached Miami in October 2004. When they arrived, they stayed at a Days Inn on Miami Beach, where Paige and Womp stayed in one room, while Daniels and Head stayed in another. On one particular day in Miami, while Daniels was riding in a white Cadillac Escalade being driven by Paige, they encountered A.W. walking down Biscayne Boulevard. A.W. was then 14 years

old. Daniels, after speaking with A.W., convinced her to "leave with him" and become a prostitute under his management.

When Daniels and A.W. returned to the Days Inn, Daniels introduced her to Head. Although A.W. had already been working as a prostitute when Daniels found her, Head explained to A.W. the details of working for Daniels and what would be expected of her. For example, Head briefed her on necessary hygiene, the appropriate prices to charge for certain services, and "just how to act with a trick." Womp was also present during these conversations. At that time, there was no mention of A.W.'s age.

Soon afterwards, the group of pimps and prostitutes left the Days Inn in Miami Beach and traveled to Fort Lauderdale, where Head and A.W. continued to work as prostitutes for Daniels. It was in Fort Lauderdale that Head first learned of A.W.'s age, after receiving a text message on her cellular phone from A.W.'s boyfriend.[6] Head, however, could not recall if she conveyed that information to Daniels.

Problems were brewing between Head and A.W. They did not like each

---

[6] On multiple occasions, Head had loaned her cellular phone to A.W., so that she could call her boyfriend. It was after one such conversation, which ended in a fight between A.W. and her boyfriend, that Head received a text message on her phone. The text message was from A.W.'s boyfriend, and it informed Head that A.W. was in fact underage.

other and frequently argued. To diffuse the situation, Daniels arranged to sell A.W. to another pimp. He called Robert Lipsey, a/k/a "Fat Daddy" ("Lipsey"), on Lipsey's cellular telephone to sell him A.W. Daniels, who was still in Florida, told Lipsey, then in Tennessee, that he was having issues with A.W., who was not getting along with Head, his "bottom girl." Daniels described A.W. to Lipsey as "young, thick, and cute." Lipsey agreed to pay Daniels $200 for A.W., who would then become his prostitute. Lipsey did not have any other prostitutes working for him at that time, as his last prostitute "grew up" and left him.

Daniels and Paige took A.W. to the bus station in Miami, Florida, where she boarded a bus bound for Memphis, Tennessee. When she arrived at the Memphis bus station, A.W. called Lipsey on his cellular phone. Lipsey, along with a partner, came to pick her up. A.W. identified herself to Lipsey as "Tiffany Thomas," the name on her bus ticket. From the bus station, they drove to a hotel room in West Memphis, Arkansas. There, Lipsey taught A.W. "the rules" of working at a truck stop, which included walking around until a truck driver provided her with a "safe house."[7] In addition, Lipsey told A.W. how to talk "really sexy" on a CB radio, how to describe herself, how to watch out for the

---

[7] Lipsey testified that a "safe house" was a truck that prostitutes can "use all night long, talk on the CB to catch dates, watch out for police and things of that nature."

police, and how much to charge her customers. After receiving payment, A.W. gave Lipsey the entirety of the money she earned and in return, Lipsey bought A.W. hygiene products, condoms, food, and clothing.

Lipsey knew that A.W. was under eighteen because she came across as childish and young; she not only appeared young, but also acted young. When Lipsey asked A.W. her age, though, she told him she was nineteen years old. Only later, when she turned fifteen, did she tell Lipsey her true age.

## B. Jury Instructions

Prior to trial, Daniels submitted proposed jury instructions asking that the jury be instructed with respect to Count I, "that the Defendant believed that A.W. was less than eighteen (18) years of age." The government argued that the jury should instead be instructed pursuant to the Eleventh Circuit Pattern Jury Instructions, which do not require the defendant to know that the victim was under eighteen, but only that the victim was actually under eighteen. Daniels acknowledged that the relevant pattern jury instructions did not require knowledge of the victim's age, but argued that under other circuit decisions, 18 U.S.C. § 2422(b) contained a mens rea requirement as to the age element.[8] After

---

[8] See, e.g., United States v. Cote, 504 F.3d 682, 684-86 (7th Cir. 2007); United States v. Meek, 366 F.3d 705, 717-22 (9th Cir. 2004).

8

analyzing the language of § 2422(b), the district court determined that the

knowledge element did not apply to the victim's age, and gave the jury the pattern

instruction requested by the government.[9]  Daniels objected to the instruction

---

[9] The court's instruction was as follows:

In Count I the defendant is charged with violating 18 U.S.C. § 2422(b).  It's a federal crime for anyone [to use] any facility of interstate or foreign commerce to persuade, induce, entice, or coerce anyone under eighteen (18) years old to engage in prostitution or any sexual activity for which any person could be charged with a criminal offense.  The defendant can be found guilty of this crime only if all the following facts are proved beyond a reasonable doubt.

First, that the defendant knowingly persuaded, induced, enticed or coerced A.W. to engage in prostitution or a sexual activity with himself or a third party as charged.

Second, that the defendant used a facility of interstate commerce, such as telephone, motel/hotel, or a bus crossing state lines to do so.

Third, that A.W. was less than 18 years old.

Fourth, that (1) or more of the individuals engaging in the sexual activity could have been charged with a criminal offense under the law of Florida.

As to the first element, in considering the terms "persuade," "entice," or "coerce," I instruct you to use their plain and ordinary definition. As used in this instruction, induce means to stimulate the occurrence of or to cause . . . .

As to the second element, a cell phone is a facility of interstate commerce. A hotel/motel is a facility of interstate and foreign commerce because it serves interstate travelers, even if the greater share of its customers are from inside the state. A bus that crosses state lines is also a facility of interstate commerce.

As to the third element, while it is necessary for the government to prove that A.W. was, in fact, less than eighteen (18) years of age, it is not necessary for the government to prove that the defendant knew that A.W. was less than eighteen years of age . . . .

9

regarding Count I.[10]

With respect to Count III, Daniels asked for an instruction stating,

The Defendant can be found guilty [of] the offense only if all of the following facts are proved beyond a reasonable doubt: First: The Defendant knowingly transported A.W. across a state line; and Second: The Defendant transported A.W. with the intent that A.W. engage in prostitution or any sexual activity for which any person can be charged with a criminal offense.

After some discussion with the parties,[11] the court's instruction was as follows:

---

[10] Daniels also objected to a supplementary instruction, which read that, "as to the third element, while it necessary for the government to prove that A.W. was, in fact, less than eighteen years of age, it is not necessary for the government to prove that the defendant knew that A.W. was less than eighteen years of age."

[11] The trial transcript reflects that the district court reviewed the jury instructions with the prosecutor and Daniels's counsel in a bench conference immediately before both parties presented their closing arguments. During this conference, the court went through the instructions and asked whether the prosecutor or Daniels's counsel had objections to the instructions. After the court noted Daniels's counsel's objection to the instructions as to Count I, the conference proceeded as follows:

> THE COURT: Count 2, any objection?
>
> [PROSECUTOR]: No objection.
>
> THE COURT: Count 3, any objection?
>
> [DANIELS'S COUNSEL]: Your Honor, we just wanted to renew our objections. We have an objection to the definition of interstate commerce. If you could give me one second just to review it. We would like our objection noted for the record that we believe that for the same reasons that knowing applies to both elements of the crime in the previous count, similarly here, under Flores-Figueroa, knowing applies to whether or not the defendant did things in interstate commerce, which would be contrary to the last sentence of the instruction in Count 2.

10

In Count 3, the defendant is charged with violating 18 U.S.C. § 2421. It's a federal crime for anyone, to knowingly transport an individual in interstate commerce with the intent that such individual engage in prostitution or any sexual activity for which a person can be charged with a criminal offense. The defendant can be found guilty of that offense only if all of the following facts are proved beyond a reasonable doubt.

First, that the defendant knowingly transported A.W. across a state line.

Second, that the defendant transported A.W. with the intent that A.W. engage in prostitution or any sexual activity for which any person can be charged with a criminal offense.

As to the first element of the offense, the phrase "transport across a state line" means to move or carry, or cause someone to be moved or carried, from one state to another. It is not necessary to show that the defendant knew that state lines were being crossed. However, the government must prove, beyond a reasonable doubt, that state lines were crossed . . . .

## II. Standard of Review

There are various standards that apply to the issues raised by Daniels in this appeal. The interpretation of a statute is a question of law subject to <u>de novo</u> review. <u>United States v. Pistone</u>, 177 F.3d 957, 958 (11th Cir. 1999). This court reviews <u>de novo</u> whether the evidence was sufficient to sustain conviction. <u>United</u>

---

THE COURT: Okay. I will note the objection to that. Count 3?

[PROSECUTOR]: No, no objection, Your Honor.

[DANIELS'S COUNSEL]: No objection, Your Honor.

11

States v. Jiminez, 564 F.3d 1280, 1284 (11th Cir. 2009). The issue of whether a jury instruction misstated the law or misled the jury to the defendant's prejudice is reviewed de novo. United States v. Deleveaux, 205 F.3d 1292, 1296 (11th Cir. 2000).

If a party does not object to the court's instructions, we review for plain error. United States v. Prather, 205 F.3d 1265, 1270 (11th Cir. 2000). Where, however, a party expressly agrees with the court's instruction, the claimed error is waived and we will not review it, even for plain error. United States v. Fulford, 267 F.3d 1241, 1246-47 (11th Cir. 2001). Similarly, where a defendant invites error by expressly consenting to the admission of evidence, we will not review his appellate argument contesting that admission, even for plain error. United States v. Jernigan, 341 F.3d 1273, 1289-90 (11th Cir. 2003).

In reviewing a claim under the Sentencing Guidelines, this Court reviews the district court's findings of fact for clear error and its interpretation of the Guidelines de novo. United States v. Rendon, 354 F.3d 1320, 1328-29 (11th Cir. 2003). The substantive reasonableness of a sentence is reviewed for abuse of discretion in light of the totality of the circumstances. Gall v. United States, 552 U.S. 38, 51, 128 S. Ct. 586, 597 (2007).

12

## III.  Analysis

Daniels advances the following issues on appeal in regard to his convictions and sentences for Counts I and III:

1.  Whether the district court erred in denying Daniels's motion for a judgment of acquittal as to Count I because there is insufficient evidence to support Daniels's conviction for using a facility or means of interstate commerce to persuade, induce, entice, or coerce A.W. to engage in prostitution, in violation of 18 U.S.C. § 2422(b).

2.  Whether the district court erred in not instructing the jury that the government was required to prove that Daniels knew that A.W. had not attained the age of 18 years in order to establish that Daniels violated 18 U.S.C. § 2422(b).

3.  Whether the district court erred in not instructing the jury that the government was required to prove that Daniels knew that A.W. would be transported interstate in order to establish that Daniels violated 18 U.S.C. § 2421.

4.  Whether the district court erred in admitting into evidence Daniels's judgment of conviction from the Eastern District of Michigan.

5.  Whether Daniels's sentence is unreasonable in that it is to run consecutively to the sentence he is serving in connection with his convictions in the Eastern District of Michigan or in that it includes a 25-year term of supervised release.

6.  Whether the district court erred in applying a two-level sentencing enhancement based upon a finding that

Daniels exerted "undue influence" over A.W.

We address these issues in turn.

## A.

As to the first issue, Daniels argues that there was insufficient evidence to support his conviction for the violation of § 2422(b) charged in Count I because no reasonable jury could have found that he persuaded, induced, enticed, or coerced A.W. to engage in prostitution or that he used a facility or means of interstate commerce to do so. Daniels contends that the mere fact that A.W. ultimately came to work for him as a prostitute is not sufficient to conclude that he used any form of persuasion, inducement, enticement, or coercion. Daniels further contends that the government failed to offer any evidence that he used a facility of interstate commerce to induce A.W. to engage in prostitution.[12]

> Section 2422(b) states, in pertinent part,
>
> Whoever, using the mail or any facility or means of interstate or foreign commerce, . . . knowingly persuades, induces, entices, or coerces any individual who has not attained the age of 18 years, to engage in prostitution or any sexual activity for which any person can be charged with a criminal offense, . . . shall be fined under this title and imprisoned not less than 10 years or for life.

18 U.S.C. § 2422(b).

---

[12] Daniels does not challenge the sufficiency of the evidence presented as to A.W.'s minor status or the fact that she engaged in prostitution.

14

Daniels's actions arranging for A.W.'s sale to Lipsey and putting her on a bus so she could reach him clearly falls within this circuit's definition of "induce." See United States v. Murrell, 368 F.3d 1283, 1287 (11th Cir. 2004). In Murrell, we ruled that an individual "induces" a minor to engage in sexual activity for purposes of section 2422(b) where that individual "stimulate[s] or cause[s] the minor to engage in sexual activity." Our reasoning was as follows:

> [T]he term "induce" in § 2422 is not ambiguous and has a plain and ordinary meaning. "Induce" can be defined in two ways. It can be defined as "[t]o lead or move by influence or persuasion; to prevail upon," or alternatively, "[t]o stimulate the occurrence of; cause." We must construe the word to avoid making § 2422 superfluous. To that end, we disfavor the former interpretation of "induce," which is essentially synonymous with the word "persuade."

Id. at 1287 (internal citations omitted). Here, Daniels's actions satisfy this circuit's definition of "induce."

Nor is there any question that Daniels's actions were interstate in nature. Lipsey testified that Daniels contacted him by phone to arrange for the sale of A.W. Further evidence presented at trial showed that Daniels used his cellular phone for that negotiation. Our case law holds that the use of a cellular phone is interstate commerce. See, e.g., United States v. Evans, 476 F.3d 1176, 1180–81 (11th Cir. 2007) (stating that the use of telephones and cellular telephones "is sufficient to satisfy § 2422(b)'s interstate-commerce element."). Lipsey further

15

testified that at the time the agreement was made, he was in Memphis, Tennessee, Daniels was in Florida, and Daniels put A.W. on a bus en route to him. The sale of A.W. to Lipsey therefore required her to travel from Florida to Tennessee. Head also testified to the same. Thus, the district court did not err in denying Daniels's motion for judgment of acquittal on Count I. Although Daniels may not have used a facility or means of interstate commerce when he initially induced A.W. to work for him, he certainly did when he telephoned Lipsey in Tennessee, arranged for him to become A.W.'s pimp, and coerced A.W. to be transported across state lines from Florida to Tennessee.

**B.**

The second issue before this Court is whether the district court erred in not instructing the jury that the government was required to prove that Daniels knew that A.W. had not attained the age of 18 years in order to establish that Daniels violated 18 U.S.C. § 2422(b). This is an issue of first impression in the Eleventh Circuit.

Section 2422(b) states, in pertinent part,

> Whoever, . . . knowingly persuades, induces, entices, or coerces any individual who has not attained the age of 18 years, to engage in prostitution or any sexual activity for which any person can be charged with a criminal offense, . . . shall be fined under this title and imprisoned not less than 10 years or for life.

16

18 U.S.C. § 2422(b). Daniels puts forth two arguments relating to this issue. First, he argues that the Supreme Court's decision in <u>Flores-Figueroa v. United States</u>, 556 U.S. 646, 129 S. Ct. 1886 (2009), demands proof of such knowledge where the Court interpreted a statute that Daniels characterizes as "grammatically similar" to § 2422(b). Second, Daniels argues that the district court erred in failing to instruct the jury that it was required to find that Daniels knew that A.W. had not yet attained the age of 18 years.

In <u>Flores-Figueroa</u>, the Court considered whether an aggravated identity theft statute, 18 U.S.C. § 1028A(a)(1), required the government to show that the defendant knew that the "means of identification" he or she unlawfully transferred, possessed, or used, in fact, belonged to "another person." 556 U.S. at 647, 129 S. Ct. at 1888. Ignacio Flores-Figueroa, a citizen of Mexico, gave his employer a false name, birth date, and Social Security number, along with a counterfeit alien registration card, in order to secure employment. Initially, the Social Security number and the number on the alien registration cards were not those of real people. <u>Id.</u> at 649, 129 S. Ct. at 1889. However, in 2006 he presented his employer with new counterfeit Social Security and alien registration cards that contained his real name, but also contained numbers assigned to other people. <u>Id.</u>

17

Flores-Figueroa's employer submitted his documents to U.S. Immigration and

Customs Enforcement, who discovered the fraudulent use of the numbers. Id.

Flores-Figueroa argued that the pertinent identify theft statute required that the

government prove that he had actual knowledge that the "means of identification"

he was using belonged to someone else. Id. at 648, 129 S. Ct. at 1889. The

government countered that the statute did not impose such a knowledge

requirement.

Section 1028A(a)(1) states, in relevant part, "Whoever . . . knowingly

transfers, possesses, or uses, without lawful authority, a means of identification of

another person . . . shall be punished as provided in subsection (b) of this section."

18 U.S.C. § 1028A(a)(1). The Flores-Figueroa Court held that § 1028A(a)(1)

requires proof that the defendant not only had knowledge that he was unlawfully

using a means of identification, but also that the means of identification was that

"of another person." Id. at 647, 129 S. Ct. at 1888. Rejecting that "knowingly"

applied only to the transfer, possession, or use of any means of identification, the

Court reasoned that "[a]s a matter of ordinary English grammar, it seems natural to

read the statute's word 'knowingly' as applying to all the subsequently listed

elements of the crime." Id. at 650, 129 S. Ct. at 1890. The Court further

explained that "courts ordinarily read a phrase in a criminal statute that introduces

the elements of a crime with the word 'knowingly' as applying to each element." Id. at 652, 129 S. Ct. at 1891 (citing United States v. X-Citement Video Inc., 513 U.S. 64, 115 S. Ct. 464 (1994)). In so holding, the Court also rejected the government's argument that, in many circumstances, it is difficult to prove beyond a reasonable doubt that a defendant has the necessary knowledge that the identification, in fact, belonged to another person. The Flores-Figueroa Court reasoned that in the classic case of identity theft intent and knowledge are generally not difficult to prove. Id. at 656, 129 S. Ct. at 1893.

In his concurring opinion in Flores-Figueroa, Justice Alito expressed concern that the Court's majority opinion might be read "as adopting an overly rigid rule of statutory construction." Id. at 659-61, 129 S. Ct. at 1895-96 (Alito, J., concurring). Instead, he preferred a contextual approach. Justice Alito gave examples where context may rebut the presumption that the specified mens rea applies to every element of the offense. For example, he pointed to 18 U.S.C. § 2423(a), a statute which "makes it unlawful to 'knowingly transpor[t] an individual who has not attained the age of 18 years in interstate or foreign commerce . . . with intent that the individual engage in prostitution, or in any sexual activity for which any person can be charged with a criminal offense.'" Id. at 660, 129 S. Ct. at 1895 (Alito, J., concurring) (internal quotations omitted).

19

Justice Alito explained that federal circuit courts have uniformly held that in those instances, a defendant's guilt has not turned on his or her knowledge of the victim's age. Id.

The majority in Flores-Figueroa approved of Justice Alito's reasoning. It acknowledged that there are instances that involve special contexts where "a more detailed explanation of background circumstances . . . call for such a reading. As Justice Alito notes, the inquiry into a sentence's meaning is a contextual one." Id. at 652, 129 S. Ct. at 1891. However, in reaching its decision, the Flores-Figueroa Court determined that no special context was present in the aggravated identity theft statute at issue because its legislative history was inconclusive on the subject. Id. at 654-55, 129 S. Ct. 1892. Thus, it needed not apply Justice Alito's approach.

After careful consideration of Flores-Figueroa, we decline to find knowledge a requirement here. In this case, we are called upon to interpret a statute concerned with the protection of minors against sexual exploitation. Despite the similarities in the grammatical structure of § 1028A(a)(1) and § 2422(b), we find that they are distinguishable.

The circumstances at issue here are more akin to those at issue in the interpretation of § 2423(a), which Justice Alito addressed in his concurring opinion in Flores-Figueroa. Id. at 660, 129 S. Ct. at 1895-96 (Alito, J.

20

concurring). Clearly there is a "special context" present here—one not present in

Flores-Figueroa—the protection of the very young, that calls for a contextual

approach to statutory interpretation. Moreover, our decision to reject a knowledge

requirement to convict under § 2422(b) is consistent with congressional intent to

protect the most vulnerable among us.[13]

Although there is no authority in our circuit deciding whether or not a

defendant's knowledge of the victim's age is an essential element, at least six of

our sister circuits have considered this issue within the context of § 2423(a)

convictions and held it is not.[14] Today we adopt that reasoning and find that

---

[13] Both case law and legislative history is replete with congressional recognition that young children need special protection against sexual exploitation. See, e.g., United States v. Taylor, 239 F.3d 994, 997 (9th Cir. 2001)(citing H.R. Rep. No. 105-557, at 17 (1998)) (justifying a 1998 amendment increasing penalties for offenses committed under § 2423(a)).

[14] See, e.g., United States v. Jones, 471 F.3d 539 (4th Cir. 2006); United States v. Griffith, 284 F.3d 338, 350-51 (2d Cir. 2002); Taylor, 239 F.3d at 997; United States v. Hamilton, 456 F.2d 171, 173 (3d Cir. 1972). Two of our sister circuits specifically rejected that Flores-Figueroa compelled a contrary interpretation. See Daniels, 653 F.3d at 410; United States v. Cox, 577 F.3d 833, 837-38 (7th Cir. 2009). Section 2423(a) provides,

> A person who knowingly transports an individual who has not attained the age of 18 years in interstate or foreign commerce, or in any commonwealth, territory or possession of the United States, with intent that the individual engage in prostitution, or in any sexual activity for which any person can be charged with a criminal offense, shall be fined under this title and imprisoned not less than 10 years or for life.

18 U.S.C. § 2423(a). Given the similarities between § 2423(a) and § 2422(b), we find these decisions persuasive and see no reason to treat the knowledge requirement as to one different from the other. The change in the jurisdictional element from the transportation of a minor in interstate commerce addressed in § 2423(a) to using a facility or means of interstate commerce to persuade, induce, entice, or coerce a minor, as addressed in § 2422(b), is not significant and fails

21

§ 2422(b) likewise does not require that the government prove that a defendant knew his victim was under the age of eighteen in order to convict.

A thorough review of the jurisprudence rejecting scienter as an elemental requirement in § 2423(a) convictions reveals several reasons supporting such an outcome, which are applicable to the facts and statute before us. Although there is a general presumption that a knowing mens rea applies to every element in a statute, cases concerned with the protection of minors are within a special context, where that presumption is rebutted. X-Citement Video, 513 U.S. at 72 n.2, 115 S. Ct. at 469 n.2 (stating that there is a historical exception to the presumption that a scienter requirement applies to every element of crime for "sex offenses . . . in which the victim's actual age was determinative despite defendant's reasonable belief that the girl had reached age of consent") (quoting Morissette v. United States, 342 U.S. 246, 251 n.8, 72 S. Ct. 240, 244 n.8 (1952)) (internal quotation marks omitted). The criminality of the conduct defined in § 2422(b) is not dependent upon the victims' minor status as the conduct is covered by § 2422(a). This indicates that the purpose of § 2422(b) is to increase the penalty for that conduct where a minor was involved.

to show that Congress intended to add knowledge of the victim's age for one having not done so in the other.

In particular, we are persuaded by the Seventh Circuit's approach in Cox, which relied on Justice Alito's contextual approach in rejecting a Flores-Figueroa challenge. The Cox court distinguished its rationale from that of X-Citement Video. Cox, 577 F.3d at 837. In X-Citement Video, the Supreme Court held that "the age of the performers is the crucial element separating legal innocence from wrongful conduct." 513 U.S. at 73, 115 S. Ct. at 469. In contrast, the Cox court explained that the conduct prohibited by § 2423(a) is already prohibited by § 2421, which puts the defendant on notice that he is violating the law when he transports an individual of any age in interstate commerce for the purpose of engaging in prostitution. Cox, 577 F.3d at 837. Accordingly, the Cox court found that § 2423(a) merely imposes a tougher penalty on those who are transporting minors for the purpose of prostitution—it does not run the risk, as the statute at issue in X-Citement Video did, of criminalizing otherwise legal behavior.

Like the Cox court, we agree that Flores-Figueroa does not mandate a bright-line rule for all occasions. As the Seventh Circuit observed, "[t]he Flores-Figueroa Court made clear, pointing to the concurring opinion by Justice Alito, that 'the inquiry into a sentence's meaning is a contextual one,' and that a 'special context' might call for a different statutory interpretation." Id. at 838 (quoting Flores-Figueroa, 556 U.S. at 652).

Daniels makes essentially the same arguments as the defendant in Cox by urging that the Court's decision in Flores-Figueroa controls.[15] He argues that the knowingly element clearly applies to the verbs—"persuades, induces, entices, or coerces"—and equally to the object of the verbs—"to engage in prostitution or . . . sexual activity." Therefore, he contends that it makes no sense that the intervening factor that the individual has not attained the age of eighteen would not be encompassed by the "knowingly" adverb as well. Likewise, Daniels contends that the language in § 2422(b) is grammatically similar to that in § 1028A(a)(1) and that Flores-Figueroa should control our interpretation of § 2422(b). Thus, he argues it would make no sense that the factor in between these two elements (that the individual has not attained the age of eighteen) would not be equally encompassed by the "knowingly" adverb.

In further support of his argument, Daniels urges that finding knowing mens rea applicable to every element would be in line with this circuit's approach in rejecting an "impossibility" defense under § 2422(b), in cases where the defendant attempts to persuade or induce an undercover agent posing as a minor to engage in

_____

[15] Daniels also relies on two cases from other circuits rejecting First Amendment challenges to § 2422(b), and holding that the statute passes constitutional muster because it requires knowledge of age. See Cote, 504 F.3d at 684-86; Meek, 366 F.3d at 717-22. These decisions are not controlling as they were decided in the context of attempt rather than that of a completed offence. Also, they were decided before the Supreme Court's decision in Flores-Figueroa with Justice Alito's concurring opinion.

24

illegal sexual activity. Daniels cites United States v. Root,[16] for the proposition that a defendant's knowledge and intent is what matters. In Root, we held that "the fact that Root's crime had not ripened into a completed offense [was] no obstacle to an attempt conviction" under § 2422(b) and "belief that a minor was involved [was] sufficient to sustain" such a conviction. Root, 296 F.3d at 1227. Daniels argues that the same showing of knowledge and intent is required here.

Daniels's argument is misplaced. In Root, our holding was based on the rejection of a defense to charges brought under § 2422(b): the defendant there had knowledge, had the intent, and took steps in an attempt to commit the crime. By finding the evidence sufficient to establish knowledge and intent, we honored the congressional goal of protecting minors victimized by sexual crimes. The fact that there was no actual minor involved was not a barrier to conviction. Here, the opposite is true. We have a minor victim, who was used for prostitution. Daniels's alleged lack of knowledge as to her age cannot serve as a shield from conviction.

Our ruling today is decided in the same spirit as we decided Root. We honor the congressional goal inherent in the Child Protection and Sexual Predator

---

[16] 296 F.3d 1222, 1227 (11th Cir. 2002), superseded by statute on other grounds as recognized in United States v. Jerchower, 631 F.3d 1181, 1186-87 (11th Cir. 2011).

Punishment Act of 1998,[17] and reach a holding that aims to protect minors—not make conviction more difficult for crimes that affect them. A defendant such as Daniels who lures and encourages young children into these activities does so at his own peril, regardless of what the victim says or how she appears. He runs the risk that he is dealing with someone who falls within the purview of § 2422(b), thus subjecting him to its enhanced penalties.

Therefore, based on the forgoing reasons, we affirm the district court's jury instruction as to the charges under § 2422(b). Proof that the defendant knew the victim was under the age of eighteen is not required.

## C.

The third issue on appeal is whether the district court erred in not instructing the jury that the government was required to prove that Daniels knew that A.W. would be transported interstate in order to establish that Daniels was guilty of violating § 2421, as alleged in Count III of the indictment. Similar to the

---

[17] The Act was later renamed the Protection of Children from Sexual Predators Act of 1998. H.R. Rep. No. 105-557, at 1 (1998), reprinted in 1998 U.S.C.C.A.N. 678. See United States v. Searcy, 418 F.3d 1193, 1197-98 (11th Cir. 2005) ("Among the amendments to Title 18 was the amendment of § 2422(b) to increase the maximum prison sentence from ten to fifteen years. Such amendments [are] necessary in light of the increasing number of cases in which children enticed via the internet had been kidnaped, photographed for child pornography, raped, and beaten. Thus, [t]he goal of [the Protection of Children from Sexual Predators Act of 1998 was] to provide stronger protections for children from those who would prey upon them.") (internal quotations and citations omitted).

arguments made pertaining to Count I, Daniels argues that knowledge of the interstate nature of the transportation involved here is required to establish a violation of § 2421. In the alternative, Daniels argues that the error in the jury instructions for Count III was plain in the light of Flores-Figueroa. The government counters that Daniels has waived review of this claim on appeal. We agree.

Prior to instructing the jury, the district court reviewed the instructions with Daniels's counsel. See supra note 11. Daniels contends that he preserved this issue on appeal by stating: "knowing applies to whether or not the defendant did things in interstate commerce" immediately after the district court asked for objections to the jury instructions for Count III. After careful review of the record, we find that Daniels did not preserve his objection to the instruction for Count III. Although Daniels's counsel's objection to the definition of interstate commerce followed the court's request for objections to the instructions for Count III, both the substance of that objection—counsel's reference to the instructions for Count II—and the context of the discussion—indicate that Daniels's counsel intended her objection to apply to the instructions for Count II and not to the instructions for Count III. See supra note 11.

Furthermore, Daniels's proposed jury instructions for Counts II and III,

27

respectively, likewise show that Daniels's counsel intended the objection raised to apply to Count II because Daniels requested a specific instruction as to knowledge of the interstate commerce element in his proposed instructions for Count II, but not for Count III. Daniels's proposed jury instructions for Count II included the specific charge, "The government must prove that the defendant knew that his recruiting, enticing, harboring, transporting, providing, or obtaining of the person under the age of 18 would affect interstate or foreign commerce." Daniels did not include this specific charge in his proposed jury instructions for Count III, further lending support to the conclusion that the objection raised was intended for Count II and not Count III.

Daniels's final argument on this issue is that the error in the jury instruction for Count III was plain. However, Daniels failed to offer any precedent from the Supreme Court or this Court that resolves the issue of whether § 2421 requires knowledge of the interstate nature of the transportation. Error cannot be plain unless it is absolutely clear under current law. See United States v. Humphrey, 164 F.3d 585, 588 (11th Cir. 1999) ("A plain error is an error that is 'obvious' and is 'clear under current law.'"). Therefore, based on the aforementioned, we find that Daniels did not preserve this issue on appeal.

28

**D.**

The fourth issue before the Court, is whether the district court erred in admitting into evidence Daniels's judgment of conviction from the Eastern District of Michigan. Daniels initially challenged the inclusion of his prior convictions, arguing that the government failed to offer any facts regarding the prior offense. He argued that the jury's reliance without any evidence of the underlying facts would have constituted plain error warranting reversal if his convictions were vacated. However, after the Sixth Circuit affirmed the majority of Daniels's convictions, he conceded in his Reply Brief that the admission of the convictions could not rise to the level of plain error and withdrew this issue from appeal. Therefore, we need not consider this issue further.

**E.**

The fifth issue Daniels raises on appeal is whether his sentences for Counts I and III are unreasonable because they are to run consecutively to the sentence in connection with his convictions in the Eastern District of Michigan. Daniels also raises the issue of whether his 25-year term of supervised release is likewise unreasonable.

Daniels argues that his sentences are substantively unreasonable because the facts in this case were used as relevant conduct in the calculation of his sentence

29

for his convictions in the Eastern District of Michigan and should therefore run concurrently, rather than consecutively to his undischarged term of imprisonment there. Daniels acknowledges that the Michigan conduct was not "relevant conduct" to the offense herein and urges that, although U.S.S.G. § 5G1.3(b) technically does not require the sentences to run concurrently, basic concerns of fairness do. As to the 25-year term, Daniels argues that it is too extensive, in light of the consecutive terms of imprisonment he faces.

We consider the substantive reasonableness of a sentence under an abuse-of-discretion standard, based on the totality of the circumstances. United States v. Pugh, 515 F.3d 1179, 1199 (11th Cir. 2008). Daniels's arguments as to the unreasonableness of his sentence do not establish that the trial court abused its discretion at sentencing. We will vacate a sentence only if we are "left with a definite and firm conviction that a mistake has been committed." United States v. Crawford, 407 F.3d 1174, 1177 (11th Cir. 2005). Here, it was within the district court's discretion under the Sentencing Guidelines to impose consecutive sentences. The district court considered Daniels's arguments for a concurrent sentence and rejected them because his conduct in the Eastern District of Michigan was not part of the relevant conduct herein. Therefore, the district court acted within its discretion in imposing a consecutive sentence. We find no abuse in its

decision to do so.

It was also within the district court's discretion to impose the 25-year term of supervised release. The applicable statute, 18 U.S.C. § 3583(k), authorizes a sentence of any term or life for defendants convicted of violations of §§ 2421 and 2422 in cases where the victim was a minor. In cases with sex offenses involving minors, the statutory maximum term is recommended. 18 U.S.C. § 5D1.2(a),(c). See Pugh, 515 F.3d at 1199 (noting the congressional purpose behind § 3583(k) was to punish sex offenders with life terms of supervised release due to high rates of recidivism). Therefore, the district court did not abuse its discretion when it imposed Daniels's 25-year term of supervised release.

**F.**

The sixth and final issue on appeal is whether the district court erred in applying a two-level sentencing enhancement based upon a finding that Daniels exerted "undue influence" over A.W. Daniels argues that his sentence is procedurally unreasonable because the district court misapplied the guidelines by applying a two-level enhancement to his base offense level under § 2G1.1(b)(4)(B) of the Sentencing Guidelines. He argues that the district court did not make sufficient factual findings to support the enhancement. Daniels further contends that A.W. was already engaged in prostitution before she met him

31

and therefore the evidence adduced at trial does not support a finding that he unduly influenced her.

At the time of Daniels's offense conduct, Sentencing Guideline § 2G1.1(b)(4)(B) provided for a two-level sentencing enhancement if the defendant "unduly influenced a minor to engage in a commercial sex act." U.S.S.G. § 2G1.1(b)(4)(B) (2003). The comment to this section provides as follows:

> In determining whether subsection (b)(4)(B) applies, the court should closely consider the facts of the case to determine whether a participant's influence over the minor compromised the voluntariness of the minor's behavior.
>
> In a case in which a participant is at least 10 years older than the minor, there shall be a rebuttable presumption, for purposes of subsection (b)(4)(B), that such participant unduly influenced the minor to engage in a commercial sex act. In such a case, some degree of undue influence can be presumed because of the substantial difference in age between the participant and the minor.

U.S.S.G. § 2G1.1 cmt. n.7 (2003).

Given this presumption and the evidence at trial, the district court did not err in applying the two-level sentencing enhancement. Here, the district court did not depart from the Guidelines range in sentencing Daniels. In sentencing Daniels, it "considered . . . the presentence report which contains the advisory

32

guidelines and the statutory factors set forth in Title 18, United States Code § 3553." Specifically, the PSI report included the following findings: Daniels was at least 10 years older than A.W.; A.W. initially declined to prostitute for Daniels but then agreed once Daniels told her that she would only have to work for a one-week trial period; Daniels instructed Head to speak with A.W. regarding what was expected of A.W. while she was working for Daniels; Daniels arranged to send A.W. to Memphis to work as a prostitute for Lipsey; and Daniels brought A.W. to a bus station and provided her with a bus ticket to Memphis, where A.W. was to meet Lipsey and begin working as a prostitute for him.

There is ample evidence supporting the district court's reliance on the Guideline's rebuttable presumption of Daniels's undue influence over A.W. The district court here resolved any disputed factual issues about whether Daniels "unduly influenced" A.W. in favor of the presentence investigation report ("PSI"). We find that these findings were sufficient to support the conclusion that the presumption of undue influence prescribed by section 2G1.1(b)(4)(B) applied here and was not rebutted.

Moreover, Daniels's contention that the district court did not make sufficient findings of fact to support the enhancement is without merit because "a sentencing court's failure to make individualized findings regarding the scope of

the defendant's activity is not grounds for vacating a sentence if the record support[s] the court's determination with respect to the offense conduct." United States v. Moriarty, 429 F.3d 1012, 1022 (11th Cir. 2005) (citing United States v. Petrie, 302 F.3d 1280, 1290 (11th Cir. 2002)).  We have previously rejected "the argument that the district court failed to make explicit findings of fact and conclusions of law" where "the court did not depart from the guidelines range and clearly resolved all disputed factual issues in favor of the [PSI]."  United States v. Saunders, 318 F.3d 1257, 1269 n.18 (11th Cir. 2003).  Here, the district court's findings were sufficient to provide for meaningful review of this case.  See United States v. Villarino, 930 F.2d 1527, 1529 (11th Cir. 1991); accord Crawford, 407 F.3d at 1177 (we will not find clear error unless we have a "firm conviction that a mistake has been committed").  Therefore, we affirm the district court's use of a two-level enhancement.

## IV.  Conclusion

Accordingly, based on the statutory language and underlying public policy, rulings of our sister circuits, and this Court's rulings in like-matters, we affirm Daniels's convictions and sentences.

**AFFIRMED.**