[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

————————————————

No. 16-15227

————————————————

D.C. Docket No. 1:16-cr-20031-UU-1

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

TORY JOHN STARR,

Defendant - Appellant.

————————————————

Appeal from the United States District Court
for the Southern District of Florida

————————————————

(November 30, 2017)

Before WILSON and ROSENBAUM, Circuit Judges, and ROBRENO,[*] District
Judge.

PER CURIAM:

---

[*] Honorable Eduardo C. Robreno, United States District Judge for the Eastern District of
Pennsylvania, sitting by designation.

Tory Starr appeals his 120-month sentence imposed after pleading guilty to possession of ammunition by a convicted felon, in violation of 18 U.S.C. § 922(g)(1). The district court sentenced Starr to the maximum sentence allowed under the statute based on an implicit determination that the ammunition was used in connection with attempted first-degree murder. On appeal, Starr argues that the district court did not make the required findings to apply the cross-reference provision in subsection (c)(1) of United States Sentencing Guidelines § 2K2.1, which would apply if Starr's ammunition was used "in connection with" the "attempted commission of another offense." Starr also argues that the district court did not make the findings required to apply the guideline section for attempted first-degree murder using that cross-reference provision. After careful review of the parties' briefs and the record, and with the benefit of oral argument, we vacate Starr's sentence and remand for resentencing. We also remand for the district court to correct a clerical error in the judgment.

## I.

Starr pled guilty to one count of knowing possession of ammunition by a convicted felon in violation of § 922(g)(1). In the process, he stipulated to the following facts: A police officer approached Starr, who was standing outside a convenience store in Miami Gardens, Florida. The officer spoke with Starr, but Starr went into the store. Starr then fled to his car and drove off. He eventually

stopped and was taken into custody.  While arresting Starr, officers saw two rounds of .22 caliber ammunition on the floor of the car.  The officers then obtained a search warrant and found another 71 rounds of .22 caliber ammunition in Starr's trunk.  After the officers gave Starr his *Miranda*[1] warnings, Starr told them that he owned the car, that he bought the ammunition from Wal-Mart, and that "the incident in [the convenience store] was a build-up from previous harassment by Hispanic officers."  The factual stipulation included no details about what the "incident" was.

The presentence investigation report (PSR) added further details, most of which Starr disputed.  The PSR said:  Officer Brian Blanco approached Starr, who was loitering in front of the convenience store.  Starr did not follow Officer Blanco's instructions, but instead went into the store.  The store's video camera showed Starr run to the back of the store and remove a revolver from his waistband.  Starr then fired at Officer Blanco as he entered the store.  Officer Blanco took cover and fired two shots back.  Starr then fled from the store and drove away, but was eventually arrested.  While in the police car being taken into custody, Starr "spontaneously" said that he was trying to kill Officer Blanco, a Hispanic officer, because he was "tired of being harassed" by Hispanic officers.

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602 (1966).

3

Based on these facts, the PSR concluded that Starr used the ammunition in connection with attempted first-degree murder. Following U.S.S.G. §§ 2K2.1(c)(1) and 2X1.1, the PSR calculated Starr's base offense level as 33 under the attempted first-degree murder guideline, § 2A2.1. The resulting guideline range of 324 to 405 months was well beyond the statutory maximum of 120 months under 18 U.S.C. § 924(a)(2). Thus, the PSR placed the guideline sentence at 120 months of imprisonment.

Starr repeatedly objected to the PSR's facts and to its reliance on the attempted first-degree murder guideline in determining Starr's sentence. In his memorandum specifying his PSR objections, Starr stated that he "objects to and denies the accuracy and completeness of the factual allegations set forth in paragraphs 3–12[2] of the [PSR]," that the "attempted murder [guideline] is incorrectly applied," and that even if the district court rejected his argument that there is no applicable cross-reference offense, "the most analogous offense to what occurred in this case would be aggravated assault." Then, at his sentencing hearing, Starr stated that "there is no nexus between the ammunition that they found" and the incident at the convenience store, that "they found ammunition in his car sometime later," and that Starr is "contesting the facts." Further, Starr

---

[2] Paragraphs 3–12 of the presentence investigation report (PSR) described the alleged offense conduct, which included Starr's alleged post-arrest spontaneous confession that he was trying to kill Officer Blanco.

asked the court to listen to testimony on this issue and to make factual findings based on the preponderance of the evidence.

The government called Officer Blanco to testify at the sentencing hearing. At first, he testified that Starr shot at him and patrons of the store. But in response to questions from the district court, Officer Blanco said that he actually did not recall if Starr fired at him. Officer Blanco said that he recalled only that Starr "produced the black handgun and pointed it at [him]." The government also showed video surveillance of the incident. Officer Blanco pointed out the gun in Starr's hand in the video.

On cross-examination, Officer Blanco again said he could not remember Starr shooting at him, explaining that he had "tunnel vision." Officer Blanco also admitted that the only cartridges found at the crime scene came from his own gun. Officer Blanco said that he approached Starr because the store had been known to harbor drug dealers. But he acknowledged that when he approached Starr, Starr was simply loitering outside the store. Finally, Officer Blanco said he could not recall anything about the firearm other than it was black.

Based on this testimony, the district court found:

> [T]he defendant's own statements after he was apprehended make it clear that this is all relevant conduct. It's all highly related, and I believe that the evidence shows probably beyond a reasonable doubt that, but certainly by a preponderance, that the defendant was the person who went into the convenience store with the gun; that he pointed the gun at the officer; that there were shots fired; that he fled;

5

that he was apprehended.  And since this was the only gun in the defendant's possession, as far as I know—maybe I'm wrong about that—that the circumstantial evidence is that this is the gun that he used inside the convenience store.

Starr then corrected the court, pointing out that there was no gun found in his case. The court replied, "I'm sorry.  You're right. . . . But there's ammunition. . . .  I think there's enough."  The district court then sentenced Starr to 120 months of imprisonment and three years of supervised release, without explicitly stating that it was adopting the PSR's determination that the guidelines section for attempted first-degree murder, U.S.S.G. § 2A2.1, applied in Starr's case.

## II.

"We review the district court's application and interpretation of the Sentencing Guidelines de novo and its factual findings for clear error."  *United States v. Smith*, 480 F.3d 1277, 1278 (11th Cir. 2007).  A factual finding is clearly erroneous when the record leaves us with "the definite and firm conviction that a mistake has been committed."  *United States v. Barrington*, 648 F.3d 1178, 1195 (11th Cir. 2011) (internal quotation marks omitted).  "When a defendant challenges one of the factual bases of his sentence as set forth in the PSR, the Government has the burden of establishing the disputed fact by a preponderance of the evidence." *United States v. Lawrence*, 47 F.3d 1559, 1566 (11th Cir. 1995).  "[T]he preponderance standard is not toothless.  It is the district court's duty to ensure that

the Government carries this burden by presenting reliable and specific evidence." *Id.*

"[T]o facilitate judicial review of sentencing decisions and avoid unnecessary remands, sentencing judges should make explicit findings of fact and conclusions of law." *United States v. Mock*, 523 F.3d 1299, 1304 (11th Cir. 2008) (alteration in original). The sentencing court's factual findings may be based on evidence heard during trial, facts admitted by the guilty plea, undisputed statements in the PSR, or evidence presented during the sentencing hearing. *United States v. Wilson*, 884 F.2d 1355, 1356 (11th Cir. 1989). However, "a sentencing court's failure to make individualized findings regarding the scope of the defendant's activity is not grounds for vacating a sentence if the record support[s] the court's determination with respect to the offense conduct." *United States v. Daniels*, 685 F.3d 1237, 1253 (11th Cir. 2012) (per curiam) (alteration in original) (internal quotation marks omitted).

The cross reference in U.S.S.G. § 2K2.1 used to calculate Starr's guideline range, subsection (c)(1), applies "if the . . . ammunition [cited in the offense of conviction] facilitated, or had the potential of facilitating . . . another offense." U.S.S.G. § 2K2.1 cmt. n.14(A).

To sentence a defendant pursuant to the attempted first-degree murder guideline, U.S.S.G. § 2A2.1, the district court must find by a preponderance of the

evidence that the defendant had the specific intent to kill the victim and took a substantial step toward doing so. *Braxton v. United States*, 500 U.S. 344, 350–51 & n*, 111 S. Ct. 1854, 1858–59 & n* (1991) ("[E]ven if one could properly conclude that the stipulation 'specifically established' that [the defendant] had shot 'at the marshals,' it would also have to have established that he did so with the intent of killing them.").

We will address the "in connection with" issue and then turn to the attempted first-degree murder guideline.

## A.

The district court sentenced Starr under the "Cross Reference" provision of guideline § 2K2.1, which states,

> If the defendant used or possessed any firearm or ammunition cited in the offense of conviction *in connection with* the commission or attempted commission of another offense . . . apply—
>
> (A) § 2X1.1 (Attempt, Solicitation, or Conspiracy) in respect to that other offense, if the resulting offense level is greater than that determined above . . . .
>
>     . . . .

U.S.S.G. § 2K2.1(c)(1) (emphasis added).  Section 2X1.1(a), which applies to attempt, solicitation, or conspiracy, states to use the base offense level for the underlying substantive offense.  The district court adopted the PSR's

recommendation, which determined the substantive offense was attempted first-degree murder and applied § 2A2.1.[3]

U.S.S.G. § 2K2.1(c)(1) requires that the firearm or ammunition be "cited in the offense of conviction." *Id*. Application Note 14(E) further states that in order to apply subsection (c)(1), the weapon cited in the conviction must also be used in the other offense. *Id*. § 2K2.1 cmt. n.14(E). The Note gives two examples: (1) If a defendant is convicted for unlawful possession of a shotgun and the court determines that the shotgun was used in a previous crime, then the court can apply subsection (c)(1); and (2) if a defendant is convicted for unlawful possession of a shotgun and the court determines that the defendant possessed and used a handgun in a previous crime, then the court cannot apply subsection (c)(1) "because the handgun was not cited in the offense of conviction." *Id*. Therefore, in order for this subsection to apply, it must be the ammunition cited in Starr's conviction for possession of ammunition by a convicted felon that facilitated, or had the potential of facilitating, the attempted commission of another offense. *See* U.S.S.G. § 2K2.1 cmt. n.14(A).

Starr argues that the district court did not make the requisite findings to apply the cross-reference in the firearms or ammunition guideline, U.S.S.G. § 2K2.1(c)(1). Specifically, Starr argues that the district court failed to find by a

---

[3] Starr's offense level using the attempted first-degree murder guideline was greater than his offense level using the firearms or ammunition guideline.

preponderance of the evidence that the ammunition was used "in connection with" the "attempted commission of another offense." *See Lawrence*, 47 F.3d at 1566; U.S.S.G. § 2K2.1(c)(1)(A) & cmt. n.14(A).

The government argues that Starr admitted to the factual allegations in the PSR because he did not properly object to them. But, at sentencing Starr clearly objected to the finding that the incident inside the convenience store was "relevant conduct" (relevant, presumably, to the offense with which he was charged). And as we have stated, Starr expressly complained that "there is no nexus between the ammunition that they found" and the incident at the convenience store, that "they found ammunition in his car sometime later," and that Starr is "contesting the facts." These statements triggered a full evidentiary hearing in which the government presented Officer Blanco's testimony and a video of the incident. Throughout cross-examination and argument at this hearing, Starr disputed many facts Blanco alleged. Therefore, Starr properly alerted the district court to "whether a challenge [was] being mounted as well as what [he] wishe[d] to contest." *United States v. Aleman*, 832 F.2d 142, 145 (11th Cir. 1987).

Significantly, the government did not object that any of the facts challenged in the hearing were undisputed in the PSR. Instead, it offered evidence to try to prove the challenged allegations. After the district court understood Starr to have objected to the PSR's factual allegations concerning the nexus between the

10

ammunition and the alleged attempted murder, and after the court went on to hold a full-blown evidentiary hearing on that issue, it is too late on appeal for the government to assert that Starr waived these objections before that hearing even happened.

Indeed, the district court's decision to conduct a hearing on the issue itself reflects that the district court did not consider Starr's objections waived. Rule 32 of the Federal Rules of Criminal Procedure provides that a sentencing court "*may* accept any undisputed portion of the presentence report as a finding of fact," Fed. R. Crim. P. 32(i)(3)(A) (emphasis added), not that it must. Yet to the extent a fact is disputed, the sentencing court "*must* . . . rule on the dispute or determine that a ruling is unnecessary either because the matter will not affect sentencing, or because the court will not consider the matter in sentencing . . . ." Fed. R. Crim. P. (i)(3)(B) (emphasis added). Here, the district court chose to hold a hearing on the challenged facts alleged in the PSR. These circumstances demonstrate that the district court did not view the objections as waived.

We therefore must consider what the district court did with the objected-to allegations following the evidentiary hearing. As it turns out, that is where the problem here arises.

After all the parties put on all their evidence, the district court did not make findings on at least some of the PSR's allegations that Starr challenged during the

11

course of the hearing.  Instead, the district court found only that "the defendant was the person who went into the convenience store with the gun; that he pointed the gun at the officer; that there were shots fired; that he fled; that he was apprehended."  And with respect to these findings that the district court did make, the evidence presented at the hearing supported all of these findings but one: that the ammunition was used in connection with the offense because "there were shots fired."  While shots were indeed fired, the government did not prove that Starr was the person who fired them.  Officer Blanco testified repeatedly that he did not remember Starr firing the gun at all, and admitted that the only casings found at the scene were from his own gun.  There was no evidence to support the contested claim in the PSR that Starr fired at Officer Blanco, and the district court did not make that finding.

The district court also did not find that the ammunition in Starr's car facilitated or had the potential of facilitating attempted first-degree murder.  *See* U.S.S.G. § 2K2.1 cmt. n.14(A).  The only evidence connecting the ammunition to the incident in the store is that ammunition was found in the car Starr used to flee.  The court made no finding that the ammunition was related to the gun Starr used, nor was there any evidence that Starr's gun and the ammunition in the car were of the same caliber.  Officer Blanco testified only that the gun was black and that Starr pointed it at him.

12

The government points to *Smith*, 480 F.3d 1277, to argue for an expansive view of the phrase "in connection with." True, this phrase is given expansive meaning in this circuit. However, in *Smith*, the defendant had ammunition in his pocket while attempting to conceal a gun and drugs before struggling with and eventually fleeing from the officer. *Id*. at 1279. And Smith was sentenced under U.S.S.G. § 2K2.1(b)(5) (2005),[4] *id*. at 1279–80, not subsection (c)(1), which is at issue here. Application Note 14(E) to § 2K2.1 specifically requires more from subsection (c)(1): the ammunition must be both used in the other offense and cited in the offense of conviction. U.S.S.G. § 2K2.1 cmt. n.14(E).[5] The government's evidence did not support a finding that Starr used the ammunition in the incident with Officer Blanco, and the rest of the record does not support that determination. *Cf. Daniels*, 685 F.3d at 1253. Therefore, we vacate and remand for the district court to make explicit factual findings that support a determination that the cross-reference, U.S.S.G. § 2K2.1(c)(1), applies, if it makes that determination at Starr's resentencing.

## B.

Starr next argues that the district court should not have applied the attempted first-degree murder guideline, § 2A2.1, to Starr. Specifically, Starr argues that the

---

[4] That section is now U.S.S.G. § 2K2.1(b)(6).
[5] Application Note 14(E) was "effective November 1, 2014, [and] eliminates the incorporation of offenses that involved a firearm other than the firearm used in the offense of conviction." *United States v. Harper*, 766 F.3d 741, 747 (7th Cir. 2014).

court failed to find by a preponderance of the evidence that he had the requisite intent to attempt to murder Officer Blanco in the first degree or that he took a substantial step in the commission of that offense. *See Lawrence*, 47 F.3d at 1566; U.S.S.G. § 2A2.1.

The government concedes that "[o]rdinarily, sentencing courts should make specific factual findings to facilitate judicial review, and the failure to do so can merit reversal if it frustrates meaningful review." The government points to our decision in *Mock*, 523 F.3d 1299, in which the district court did not make explicit findings before applying § 2A2.1 for first-degree murder. *Id.* at 1304. In *Mock*, we vacated Mock's sentence and remanded to the district court to reexamine the applicability of § 2A2.1 and, if necessary, make explicit findings. *Id.*

The same result follows here. In Starr's case the district court similarly adopted the PSR's application of the guideline for first-degree murder without making any explicit findings that Starr intended to commit that crime or that he took a substantial step toward committing that crime. Nor did the court adopt relevant facts from the PSR, something the court was permitted, but not required, to do. *See* Fed. R. Crim. P. 32(i)(3)(A). The record is thus also not sufficient to support these determinations on the first-degree murder cross-reference. *Cf. Daniels*, 685 F.3d at 1253. This is not a case where "[t]he thought process of the district court is evident." *Cf. Feazell v. Tropicana Prods., Inc.*, 819 F.2d 1036,

14

1043 (11th Cir. 1987).  Thus, we are precluded from meaningful appellate review. *See Mock*, 523 F.3d at 1304.

As a result, we vacate Starr's sentence and remand his case to the district court to reexamine the applicability of § 2A2.1 to Starr and to make explicit factual findings about whether this guidelines section or another is appropriate in determining Starr's sentence, *see Mock,* 523 F.3d at 1304, if the cross-reference, U.S.S.G. § 2K2.1(c)(1), should be applied at all.

Finally, the district court should also correct a clerical error in the judgment on remand.  Starr's judgment states that he was convicted of "possession of a firearm *and* ammunition by a convicted felon,"[6] rather than "possession of ammunition by a convicted felon."  Starr's indictment is clear that he was never charged with possession of a firearm by a convicted felon, and therefore the district court should correct the judgment in this regard.  *See United States v. Massey*, 443 F.3d 814, 822 (11th Cir. 2006) ("We may sua sponte raise the issue of clerical errors in the judgment and remand with instructions that the district court correct the errors. . . . It is fundamental error for a court to enter a judgment of conviction against a defendant who has not been charged, tried, or found guilty of the crime recited in the judgment.") (internal quotation marks omitted).

**VACATED AND REMANDED.**

---

[6] (emphasis added).